**Chester E. PARKER, Libelant,**

v.

**UNITED STATES of America and Commodity Credit Corporation, Respondents and Third-Party Petitioners,**

v.

**OREGON STEVEDORING CO., Third-Party Respondent.**

**Civ. No. 62–170.**

United States District Court
D. Oregon.

Oct. 11, 1963.

---

2. *　　*　　*　　*　　*　　*

*　　*　　*　　*　　*

Sidney I. Lezak, Acting U. S. Atty., Portland, Or., and Douglas M. Fryer, Admiralty & Shipping Section, Dept. of Justice, Seattle, Wash., for respondents and third-party petitioners.

Floyd A. Fredrickson, Gray, Fredrickson & Heath, Portland, Or., for third-party respondent.

KILKENNY, District Judge.

Libelant, a longshoreman, instituted a libel against the United States of America and Commodity Credit Corporation, for personal injuries suffered while aboard the ship. Seeking indemnity for the amount for which it was held liable, the respondents, owners and operators of the vessel, impleaded Oregon Stevedoring Co., libelant's stevedore employer.

In January, 1962, libelant was working, as a longshoreman, in the capacity of a board man, aboard the SS GILBERT M. HITCHCOCK, owned by United States. At the time libelant was injured, the stevedoring company was engaged, pursuant to contract, in performing wheat loading operations aboard said vessel. Libelant was aboard the vessel in the course of his employment and in the performance of said contract between respondent, Commodity Credit Corporation, and Oregon Stevedoring Co. On said date the vessel was in "mothball" status and deactivated from service. She was a dead ship, was withdrawn from navigation, and at the time of the accident she was loading a cargo of wheat for storage purposes.

Libelant was injured when he stepped from starboard to port over a steampipe between the aft end of number five hatch and the mooring winch, at which time his foot slipped on a patch of oil or grease on the deck. At that time, wheat dust, from the loading operation, which commenced at 8:00 A.M., had covered the oil

patch and obscured it from view. The stevedores did not bring oil aboard said vessel. The oil was on the deck when the stevedores commenced the operation that morning.

My findings in the primary case reveal the above and that respondents were negligent in permitting said oil to be on said deck, in failing to provide the libelant with a safe place to work, in failing to make a reasonable inspection of the deck area aft of the said number five hatch, in failing to clean said oil from the deck and in failing to warn the libelant of the condition of the deck on said vessel. I further found that said negligence was the proximate cause of his accident and resulting injuries, that he was permanently injured, that he sustained general and special damages in the sum of $18,910.25.

I find here the same facts which I found in the primary cause, and that said oil slick was the cause of the libelant's injuries. Further, that neither the stevedore, nor any of its agents, servants, or employees, had actual notice or knowledge of the existence of the oil or grease spot until after the injury to libelant. Respondents, on their claim for indemnity against the stevedore, argue that this was a dead ship, that there was no warranty of seaworthiness and that the stevedore had an absolute duty to make a reasonable inspection of the ship before permitting its workmen to engage in the performance of their functions under the grain loading contract. In the primary case, I took the position that this was a dead ship and that the warranty of seaworthiness did not apply. Consistency requires that I adhere to my previous ruling, although I am now somewhat in doubt as to whether this ship should be placed in the same category as the vessel which was under scrutiny in West v. United States (1959), 361 U.S. 118, 80 S.Ct. 189, 4 L.Ed.2d 161. In West, the ship had been completely deactivated and stored for several years and a stevedore had been employed to completely overhaul her and to thus make her seaworthy before she was reactivated. The vessel was there under the complete control of the stevedore, the only Government representative aboard being those employed for the purpose of inspecting the work. Here the vessel was moved by tug from Astoria to Portland for the specific purpose of receiving a cargo of grain and returning to its storage berth at Astoria. Respondents kept a crew of six men aboard the vessel for the primary purpose of eliminating hazards which might be found on a reasonable inspection. The night mate on the vessel testified that it was one of the duties of the crew to remove all hazards, including all oil spots. He further testified that this vessel was exceptionally clean and in good condition. In West, the stevedore, and its workmen, went aboard for the specific purpose of cleaning up the vessel and making it seaworthy. Here, the stevedore and its workmen went aboard the vessel with the fixed intent of loading grain. On the facts here presented, the stevedore and its workmen should be permitted to assume, in the absence of notice to the contrary, that the workmen would have a reasonably safe place to work in carrying out the contract. This distinction between West and our case is remarkably well expressed in the opinion.[1] By all

1. 361 U.S. 121, 80 S.Ct. 192, 4 L.Ed.2d 161.
"* * * It is evident that the sole purpose of the ship's being at Atlantic's repair dock at Philadelphia was to make her seaworthy. The totality of the reparation on the vessel included compliance with the hundreds of specifications in the contract calling for the repairing, reconditioning, and replacement, where necessary, of equipment so as to make fit all the machinery, equipment, gear, and every part of the vessel. Strangely enough, the defective water line and the metal plug specifically pointed to by petitioner as being defective were listed in the specifications for 'cleaning and repairing' and the 'replacement of all defective or missing plugs'." * * *

"On the other hand, the vessels involved in the cases depended upon by petitioner were, at the time of the injuries, in the hands and under the control of the owners or charterers and, in-

## 650

rules of reason, the stevedore, and its employees, in this case should not be placed under the same burdens as those imposed in that decision. It is my considered judgment that the dead ship doctrine as announced and applied in West, and other similar cases, has no application to my present problem.

 It is well settled that a stevedore is not insurer or guarantor of the safety of a longshoreman working aboard a vessel and, under ordinary circumstances, the stevedore's negligence, which breaches his warranty of workmanlike performance, is a question of fact, to be tried by the Court, or in some instances a jury. Crumady v. The Joachim, Hendrick Fisser, 358 U.S. 423, 79 S.Ct. 446, 3 L.Ed.2d 413; Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, 369 U.S. 355, 82 S.Ct. 780, 7 L.Ed.2d 798. As a general rule, the Courts allow indemnity against the stevedore where a longshoreman has been injured, only in those cases where the stevedore had actual notice of the hazardous condition. Smith v. Jugosalvenska Linijska Plovidea, 278 F.2d 176 (4 Cir. 1960); Santomarco v. United States, 277 F.2d 255 (2 Cir. 1960).

 In those cases where the stevedore has had no knowledge of the hazardous condition, the Courts have not imposed a duty to inspect and indemnity has not been allowed against the stevedore. Calderola v. Cunard Steamship Co., 279 F.2d 475 (2 Cir. 1960); CIA Maritima Del Nervion v. James J. Flanagan Shipping Corp., 308 F.2d 120 (5 Cir. 1962). Here, I again emphasize my finding that the stevedore had no actual notice or knowledge of the existence of the oil or grease spot. Located where it was, this spot would not be obvious even on a cursory inspection and, I so find. Ignatyuk v. Tramp Chartering Corporation, 250 F.2d 198, 201 (2 Cir. 1957).

 On facts such as those here presented, the failure of the stevedore to make a reasonable inspection is not a stead of undergoing general repairs, were in active maritime service in the course

breach of the standard of performance which a stevedore impliedly warrants to the shipowner. A discussion or analysis of other cases cited by the parties is not indicated.

Respondent's claim for indemnity cannot be sustained.

This Opinion, the agreed facts and my findings in the primary case are adopted as my findings and conclusions in this cause.

of loading or unloading cargo pursuant to voyages. * * * "