**WATERMAN STEAMSHIP CORPORATION, Libelant,**

v.

**BRADY–HAMILTON STEVEDORE CO., a corporation, and Matson Terminals, Inc., a corporation, Respondents.**

Civ. No. 64–66.

United States District Court
D. Oregon.

March 2, 1965.

Carl R. Neil, Krause, Lindsay & Nahstoll, Portland, Or., for libelant.

Nathan J. Heath, Gray, Frederickson & Heath, Portland, Or., for respondent Brady-Hamilton.

William F. Thomas, Portland, Or., for respondent Matson Terminals, Inc.

KILKENNY, District Judge.

Waterman settled a personal injury action against it by a longshoreman employee of Matson and now prosecutes this libel for indemnity against Matson, and Brady, the master stevedore responsible for loading hatch No. 3, of THE S.S. DESOTO, the vessel on which the accident occurred. Waterman is engaged in the operation of seagoing vessels and is the owner and operator of the DESOTO. Respondents Brady and Matson are master stevedores, the former operating in Portland, Oregon, and the latter in Oakland, California.

Between 4:00 and 4:45 P.M. on January 24, 1961, in Portland, Oregon, Brady completed the loading of cargo in said hatch. Immediately thereafter Brady commenced covering the hatch and by 4:45 P.M. all longshoremen were on deck and said hatch was completely covered. The longshoremen then left the ship and at 6:00 P.M. she sailed from Portland to Oakland, California.

On the afternoon of January 26th the DESOTO arrived at Oakland and Matson longshoremen went aboard at approximately 1:20 P.M. Approximately an hour later the first loading operation was undertaken and after 3:00 P.M. Matson's employees uncovered the after section of hatch No. 3 on the main deck; then uncovered on the upper 'tween deck and finally went down to the lower 'tween deck level. While the longshoremen were engaged in removing the tank tops from the tanks in said level, one Campbell, a longshoreman, stepped backward into a space where two hatch boards were missing. He sustained substantial injuries. Miscellaneous dunnage was lying atwhartship the opening where the hatch boards were missing. Subsequently, Campbell commenced an action against Waterman for the damages sustained. Both Brady and Matson were properly notified of the commencement of the action and tendered the defense, but each refused to accept the responsibility of defending the action. After considerable negotiations the action was settled by Waterman for $4,000.00. It incurred costs and attorney fees in the sum of $1,030.33 in defending the action. No question is raised as to the reasonableness of the settlement nor the amount of the attorney fees and the costs.

■ At the outset, I have no difficulty in finding that the open space left by the missing hatch boards, rendered the ship unseaworthy and, I so find.

Waterman charges that each of respondents is obligated to indemnify it for the sums paid in settlement of the Campbell claim.

### CLAIM AGAINST BRADY

■ Ryan Stevedoring Co., Inc. v. Pan-Atlantic S. S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), and its numerous progeny, including Italia Soc. v. Oregon Stevedoring Co., 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964), teach that Brady, when it undertook to load the hatch, bound itself to an implied obligation to perform its stevedoring services in a good and workmanlike man-

ner, i. e., not to render the vessel unseaworthy, nor to be negligent in the performance of its contract.

■ The evidence establishes that the hatch was covered when the vessel arrived in Oakland. There is no evidence that the hatch was uncovered during the voyage. For that matter, there would be no valid reason to uncover the hatch during the course of the voyage. If the hatch was uncovered, the law of the sea would require the entry of such action to be made in the Log Book. No such entry appears in the Log of the DESOTO. Once the hatch was covered there was no other means of entry to the area in question until the hatch was reopened. Shortly before docking, the crew of the DESOTO unbattened the hatches and broke out the cargo lights for use by the longshoremen. There is no suggestion that her crew uncovered the hatch, such work being within the jurisdiction of the longshoremen. The weight of substantial evidence and the inferences to be drawn therefrom, compels a finding that Brady negligently failed to place the hatch boards in place and such failure rendered the vessel unseaworthy.

### CLAIM AGAINST MATSON

Waterman charges that Matson is liable for the amount of the settlement and costs by reason of:

(1) Its implied agreement to perform stevedoring services in a safe and workmanlike manner; and

(2) An express indemnity clause in their contract.

The contract provides, among other things, that Matson should:

" * * * hold harmless the vessel, its owners and operators from any claims or damage to the ship and its equipment, damage to or loss of cargo, personal injury and/or death of any person which shall result from any of the following: (1) The contractors use of his own defective gear or equipment, and (2) contractors negligent or improper use of owners and/or vessels gear or

equipment, and (3) negligence of the contractor, his agents, servants and employees, when such negligence is the primary or concurrent cause of such damage, loss, personal injury and/or death. * * * "

Waterman claims that Matson was negligent in the following particulars:

(1) Failing to properly light the area in which the longshoremen were working;

(2) Failing to properly inspect the work area;

(3) Failing to properly supervise longshore personnel; and

(4) Failing to replace the two missing hatch boards.

And that such negligence was the primary or concurrent cause of Campbell's injuries.

The record, although sketchy and indefinite, probably supports a finding that Matson failed to properly light the area in which the longshoremen were working. The testimony and the report of its walking boss point in that direction.

Although a stevedore has a duty to discover and remedy obvious defects, Ignatyuk v. Tramp Chartering Corp., 250 F.2d 198 (2d Cir. 1957), on the facts of the case before me, Matson and its workmen should be permitted to assume in the absence of any notice to the contrary, that the workmen would have a reasonably safe place to work in performing the contract with the vessel. Parker v. United States, 223 F.Supp. 647 (D.Or.1963); Orlando v. Prudential S. S. Corp., 313 F.2d 822 (2d Cir. 1963). The injured man positively testified that when he ascended into the lower 'tween deck he looked around and as far as he could determine everything seemed to be in order. It was customary for him to look around and see the condition of the area and in this instance he did look around and did not observe the hole. Consequently, on the facts of this case, I find a failure of proof on the charge of negligence that Matson failed to properly inspect the work area. Likewise, there is no proof that Matson was negligent in failing to supervise its personnel, nor in failing to replace the missing hatch boards.

Returning, for the moment, to the failure of Matson to properly light the area in which the longshoremen were working. An analysis of the evidence connected with the place where the hatch boards were missing, the location of the dunnage and the approach of the injured workman, compels a finding that the lack of adequate lighting, if such was the fact, was not a causative factor in the workman's fall and resulting injuries. It is my finding that the sole and only cause of such injuries was the negligence of Brady in failing to properly replace the hatch boards and the unseaworthy condition resulting therefrom.

On the facts, as I find them, Matson is not liable on the implied indemnity agreement which is inherent in all stevedoring contracts. Moore-McCormack Lines v. Maryland Ceiling Co., 311 F.2d 663 (4th Cir. 1962); Crumady v. The Joachim Hendrick Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959).

Left for decision, is the legal effect of the "hold harmless" provision of the contract between the vessel and Matson. Waterman cites Kokusai Kisen Kabushiki Kaisha v. Columbia Stevedoring Co., 23 F.Supp. 403 (S.D.N.Y.1938) aff'd, 100 F.2d 1016 (1938), and other cases, in support of its statement that such clauses are enforceable even though the injury was caused by the negligence of the indemnitee.

Generally, contracts will not be construed to indemnify one against his own negligence, unless such intention is expressed in clear and unequivocal terms. Rice v. Pennsylvania RR. Co., 202 F.2d 861 (2d Cir. 1953); Southern Pac. Co. v. Layman, 173 Or. 275, 145 P.2d 295 (1944); Southern Pac. Co. v. Morrison-Knudsen Co., 216 Or. 398, 338 P.2d 665 (1959); Guy F. Atkinson Co. v. Merritt, Chapman & Scott Corp., 126 F.Supp. 406 (N.D.Cal.1954).

A proper construction of the "hold harmless" clause agreed on between the parties limits the contractor's liability to the three categories expressly mentioned. None of those encompass the negligence or unseaworthy condition of the ship. Libelant recognizes this limitation, but attempts to come within the "concurrent clause" of subsection (3). Libelant's failure to prove causative negligence on the part of Matson destroys this contention. Consequently, I must find in favor of Matson.

Libelant is entitled to a decree against respondent, Brady-Hamilton Stevedore Co., a corporation, for the sum of $4,000.00, the amount of the Campbell settlement; the further sum of $1,030.33, the attorney fees and expenses paid in connection with said litigation and settlement, and interest on said sums at the rate of 6% per annum from the 27th day of December, 1963, until paid. No attorney fees will be allowed in this proceeding. Matson is entitled to a dismissal.

This opinion and the admissions in the pre-trial order shall serve as my findings and conclusions.