**William CARROLL**

v.

**FRONTERA COMPANIA NAVIERA, S.A.**

v.

**NACIREMA OPERATING CO., Inc.**

**Civ. A. No. 31954.**

United States District Court
E. D. Pennsylvania.

Sept. 16, 1966.

---

Louis Samuel Fine, of Fine, Staud & Silverman, Philadelphia, Pa., for plaintiff.

William C. Schultz, Jr., of Krusen, Evans & Byrne, Philadelphia, Pa., for Frontera Compania Naviera, S. A.

William R. Deasey, of Kelly, Deasey & Scanlan, Philadelphia, Pa., for Nacirema Operating Co.

## OPINION AND ORDER

BODY, District Judge.

The complaint in this action was filed on August 23, 1962 arising out of personal injuries allegedly sustained by the plaintiff, William Carroll, while he was engaged in the performance of his duties in discharging cargo aboard the SS BATIS on May 26, 1961.

Plaintiff, a Philadelphia longshoreman employed by Nacirema Operating Co., Inc. ("Nacirema"), brought suit against the shipowner defendant, Frontera Compania Naviera, S. A. ("Frontera") basing his claims upon unseaworthiness and negligence. Frontera joined the stevedoring company Nacirema as a third-party defendant claiming indemnity. The cause was tried before this Court and a jury from March 9, 1966 to March 22, 1966.

The trial judge submitted six special interrogatories to the jury at the conclusion of all the evidence and following the charge of the Court. None of the three counsel present noted any objection to these interrogatories. The jury responded to the interrogatories by finding:

(a) the SS BATIS was unseaworthy;

(b) Frontera was negligent;

(c) the unseaworthiness and negligence were proximiate causes of plaintiff's injuries;

(d) plaintiff was free from contributory negligence;

(e) Nacirema did not breach its warranty to Frontera;

(f) damages in favor of plaintiff in the sum of $120,000.

A verdict was therefore entered in favor of the plaintiff and against Frontera in the amount of $120,000. In the third-party action the verdict was rendered in favor of Nacirema and against Frontera. Judgments were entered accordingly on March 22, 1966.

The Court now has before it the motions of defendant Frontera to vacate the judgments against it, for judgment n. o. v., or in the alternative, for a new trial.

At the time of the accident plaintiff was forty-seven years of age and was employed as a longshoreman in the capacity of a forklift operator. At the trial plaintiff's evidence established that he was operating a forklift or chisel truck in the lower hold of Frontera's vessel, the SS BATIS, as part of the operation of unloading packaged lumber at Pier 179 in Philadelphia. As plaintiff ran his forklift over a section of stowed packaged lumber, which appeared to him and other longshoremen to be a solid lumber floor, the two rear wheels of the truck suddenly broke through the top layer of the lumber. This caused the wheels to drop into a space or "void" between bundles of lumber stow over which he was operating. When the wheels crashed through the boards in such fashion, plaintiff's body was jerked sharply forward against the steering wheel and then thrown to the rear, resulting in severe injuries to his back.

Counsel for Nacirema has accurately placed his finger on the nub of this en-

tire litigation when he states in his reply brief that the paramount question was not whether Carroll would recover but rather who would be ultimately liable. That answer actually depended on the answer to the question: What is the proper method of stowing drafts of packaged lumber aboard ship? The Court concurs with Nacirema that, on the facts presented, the jury would have had little difficulty finding that the plaintiff himself did not contribute to the accident although the concept of contributory negligence was explained in the Court's charge and was submitted to the jury upon special interrogatories.

On the question of proper stowage, Nacirema contended, through its expert witness, Captain Anton Hopen, that any open space or void between the drafts of lumber should be filled in at the loading port before the top boards of adjacent drafts are butted together to form the floor. This enables the longshoremen at the port of discharge to rely on the floor's apparent solidity and to work without the necessity of moving steel plates from place to place in the hold as the unloading process progressed.

Frontera, on the other hand, produced as its expert witness Mr. Paul J. Keeler who opined that the proper method of loading permits voids between the drafts of lumber to remain unfilled and the top board of adjacent drafts to be butted together thus necessitating longshoremen at the port of discharge to constantly shift steel plates to cover all areas where the drafts come together in order to prevent breakthroughs.

■ In short, Captain Hopen's theory of stowage places the burden of avoiding accidents of this type on the loading longshoremen in light of the common reliance placed upon their thoroughness in filling voids by the unloading longshoremen. Mr. Keeler's view would have that

burden shifted to the unloading longshoremen since voids between stows are common and such areas can be fortified quite easily if the men discharging the lumber merely cover them with steel plates as they work.

Realistically considered, therefore, the entire case clearly hinged on whose testimony the jury thought more sound and credible—that of Captain Hopen or that of Mr. Keeler. It is apparent from the jury's answers to the special interrogatories that they preferred Captain Hopen's theory.

Frontera's argument, in support of its present motions, that the jury was somehow confused by certain alleged inconsistencies between the Court's general charge and the points for charge, is simply unrealistic when one considers all of the testimony, the points for charge, the charge as a whole, and the special interrogatories submitted, without objection, to the jury.

To anyone sitting daily through the lengthy trial with the opportunity to observe the witnesses and the jury, or indeed even to one reading the impersonal record, it is crystal clear what this litigation is all about. The jurors merely weighed the evidence and rendered their verdict accordingly—a verdict which was unequivocal because they were required to reply to the specific interrogatories submitted to them.

I

LOCAL RULE 31

■ Before reaching the merits of Frontera's present motions, it is necessary to discuss an important procedural point. On August 8, 1966, the date on which these post-trial motions were argued, counsel for Nacirema filed its motion to strike all of Frontera's post-trial motions for failure to comply with Local Rule 31 of this Court.[1] Nacirema con-

---

1. *Rule 31 Post-Trial Motions.*
    A copy of each post-trial motion shall be served upon the trial judge within three (3) days after the original shall have been filed with the Clerk. Unless,

within ten days of filing a post-trial motion, (a) the transcript is ordered by a writing delivered to the official court reporter, or (b) good cause for failure to order such transcript is shown in a

tended that Frontera had not ordered a transcript as required by section (a) of Local Rule 31, and had not filed a motion with the Court as required by section (b) as an alternative to ordering such transcript. Frontera's answer to that motion reveals, and investigation confirms, that trial counsel for Frontera did order and pay for a daily transcript of the notes of testimony except for a small portion of plaintiff's direct examination and the summation speeches to the jury, which are rarely transcribed. Frontera's counsel also contacted the Official Court Reporter by telephone within ten days of filing his post-trial motions to order any remaining portions of the transcript for the purpose of preparing these motions.

In view of the reasons underlying the adoption of Local Rule 31 [Tarter v. Mylin, 258 F.Supp. 818 (E.D.Pa., May 25, 1966)] we cannot but conclude that Frontera has substantially complied with the rule. To dismiss its motions on this procedural point would be unduly harsh under the circumstances. We hereby deny said motion to strike and will now proceed to the merits of the case.

## II

### THE MERITS

Frontera has raised numerous points in support of its present motions. We have carefully considered each point and have concluded that each must be rejected. Only the following contentions will be examined in some detail. The remaining arguments are hereby rejected without further discussion as they are clearly lacking in merit.

A. THAT THE COURT ERRED IN SUBMITTING PLAINTIFF'S POINTS FOR CHARGE NOS. 7 AND 8

Plaintiff's points for charge nos. 7 and 8 read as follows:

"7. Even if the defendant did not have knowledge of the condition and had no way of learning the condition existed, if in fact the vessel was unseaworthy, the defendant is liable.

8. Even if the unseaworthy condition arose immediately before the accident and the defendant did not have and could not have timely notice of the condition, if in fact the vessel was unseaworthy, the defendant is liable."

Frontera claims "it is conceivable" that the above points could be misconstrued so as to leave the jury with the erroneous impression of the legal concept of unseaworthiness and the burden on the defendant with respect to it. The short answer to that argument is that the language contained in both points is entirely consistent with the following decisions which enunciate the correct legal standard in this area: Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960); Ferrante v. Swedish American Lines, 331 F.2d 571 (3rd Cir. 1964); Thompson v. Calmar Steamship Corp., 331 F.2d 657 (3rd Cir. 1964). We further find that the case of Morales v. City of Galveston, 370 U.S. 165, 82 S.Ct. 1226, 8 L.Ed.2d 412 (1962) is inapposite.

B. THAT THE COURT ERRED IN SUBMITTING PLAINTIFF'S POINT FOR CHARGE NO. 42

Plaintiff's point for charge no. 42 reads as follows:

"42. Even as Mr. Keeler testified the industry standard permitted boards to be pulled over empty spaces and unsupported, trade customs are not permissible to form the standard of seaworthiness in actions under Maritime Law."

It is the contention of Frontera that the jury could have been mislead into the erroneous impression that trade customs were not a relevant consideration on the issue of unseaworthiness.

The Court, by affirming this point for charge, was in no way taking Mr. Keeler's testimony with regard to trade customs from the jury's consideration altogether. Rather, the Court simply reaffirmed the well-established prin-

---

motion supported by an affidavit, a copy of which is delivered to the chambers of

the trial judge, the post-trial motion will be dismissed for lack of prosecution.

ciple that trade customs, of themselves, cannot constitute the standard of seaworthiness. Bryant v. Partenreederi-Ernest Russ, 330 F.2d 185, 189 (4th Cir. 1964).

Frontera also maintains that the Court erred in submitting Nacirema's request for instruction no. 4. That contention is likewise rejected on the basis of the *Bryant* case, supra.

C. THAT THE COURT ERRED IN SUBMITTING NACIREMA'S REQUEST FOR INSTRUCTIONS NOS. 2 AND 5

■ Frontera argues that in light of Nacirema's points nos. 2 and 5, and the Court's modification of its point no. 13, the jury was given three sets of standards to apply which only tended to confuse them. The argument with respect to the above-mentioned points is without merit.[2]

Unfortunately, the discussion by the Court with counsel of the proposed points for charge prior to their submission to the jury took place informally and without the aid of the Court Reporter. Consequently, nothing which transpired at that time appears in the trial transcript. However, my personal trial notes indicate that the attorneys for the respective parties all agreed that in order to avoid the possibility of reversible error, it would be wise to preface the word "inspection" with the phrase "reasonable, cursory, visual" since those three adjectives had been used by various courts, often interchangeably: D'Amico v. Lloyd Brasileiro Patrinonic Nationale, 354 F.2d 33 (2d Cir. 1965); Ignatyuk v. Tramp Chartering Corp., 250 F.2d 198 (2d Cir. 1957); Waterman Steamship Corp. v. Brady-Hamilton Stevedore Co., 243 F. Supp. 298 (D.C.Or.1965).

Therefore, Frontera's argument with respect to the above points for charge is the most mystifying. Certainly, Nacirema did not have an absolute responsibility to make more than a cursory or visual inspection as Frontera would have us believe. Whether they did depended largely on which expert witness the jury believed. Only under Mr. Keeler's theory of the case was more than a visual and cursory inspection required since he claimed Nacirema had reason to anticipate voids in the stow and therefore should have been held to a higher standard of inspection. But, as mentioned previously, the jury unmistakeably preferred the views of Captain Hopen. His testimony would undoubtedly support Nacirema's position that it was held only to a cursory, visual inspection since the voids should have been filled in, giving

---

**2.** *Nacirema's point no. 2* [Charge of the Court, p. 28]

"2. If you find that the stevedore used a proper method of operation in discharging the cargo; that the stevedore through its employees had no knowledge of a defect in the stowage of cargo nor could have discovered such defect in the stowage of cargo upon a visual inspection of the work area; and that the stevedore performed its services in a proper, safe and workmanlike manner with reasonable safety under the circumstances, then your verdict upon the claim of the defendant shipowner for indemnity should be in favor of the third-party defendant stevedore.

*Nacirema's point no. 5* [Charge of the Court, p. 29]

"5. If you find as a fact that a defect existed in the stowage of cargo which defect was not discovered or could not have been discovered by the employees of the stevedore upon reasonable, cursory, visual inspection of the work area, then your verdict upon the claim of the shipowner for indemnity based upon the contention that the stevedore knew or should have known of the defect in the stowage of cargo should be for the third-party defendant stevedore."

*Frontera's point no. 13* (as modified) [Charge of the Court, p. 27]

"13. If you find that an unsafe condition existed aboard the MV. BATIS and that the stevedore, Nacirema Operating Co., Inc., by its employees could have known of it by a cursory inspection and continued its men working in the hold without the proper number of steel plates or without properly placing the steel plates in the hold, and that the unsafe condition was a proximate cause of the injury, the shipowner is entitled to recover in its action over against Nacirema Operating Co., Inc. This rule applies even if the shipowner was aware of the condition."

Nacirema, the discharging stevedore, the right to rely on a solid floor.

On the basis of the instant record, Nacirema was not required to use other than visual means to inspect the floor and the proofs at trial demonstrate that they did inspect visually. It is likewise true that Nacirema was only required to inspect in a reasonable, although cursory, manner.

We conclude, therefore, that Frontera's argument, supra, is devoid of merit.

## D. THAT THE COURT ERRED IN REFUSING FRONTERA'S REQUEST NO. 15

Finally, Frontera contends that without the aid of its proposed point no. 15, the jury could have mistakenly concluded that Frontera had the duty to supervise the discharging operation and if the method used by Nacirema proved dangerous, Frontera was responsible.[3]

When deciding these post-trial motions the Court is concerned with what the jury *actually* found, not with what it could have found. In special interrogatory no. 4(a) the jury was asked:

> "4(a) Did the stevedoringf company (Nacirema Operating Co., Inc.) by its agents or employees, breach its warranty to perform its job in a safe, proper and workmanlike manner with reasonable safety under the circumstances?"

The jury answered the above question in the negative.

Since, therefore, the jury found that Nacirema performed its job safely, Frontera cannot now complain that it might have been saddled with liability for an alleged unsafe work method of Nacirema. Frontera was certainly not prejudiced in any way by the Court's refusal of its point no. 15.

---

3. "15. The stevedore, Nacirema Operating Co., Inc., was under a duty to use due care in the operation which it undertook aboard the MV. BATIS. As the work was in charge of the stevedoring in-

## ORDER

And now, this sixteenth day of September, 1966, it is ordered that the motion of third-party defendant, Nacirema Operating Co., Inc., to strike defendant's post-trial motions for failure to comply with Local Rule 31 of this Court be and the same is denied.

It is further ordered that the motions of defendant, Frontera Compania Naviera, S.A., to vacate judgments against it, for judgment n. o. v. or, in the alternative, for a new trial be and the same are denied on the merits.

dependent contractor, the Master and crew of the vessel had no duty or right to supervise as to instrumentalities adopted and methods used by the longshoremen."