William CARROLL

v.

FRONTERA COMPANIA NAVIERA, S. A., Appellant,

v.

NACIREMA OPERATING CO., Inc.

No. 16274.

United States Court of Appeals Third Circuit.

Argued June 23, 1967.

Decided Jan. 5, 1968.

Rehearing Denied Feb. 20, 1968.

T. E. Byrne, Jr., Krusen, Evans & Byrne, Philadelphia, Pa. (William C. Schultz, Jr., Philadelphia, Pa., for appellant, Frontera Compania Naviera, S. A. on the brief), for appellant.

Louis S. Fine, Fine, Staud & Silverman, Philadelphia, Pa., for appellee, William Carroll.

William R. Deasey, Kelly, Deasey & Scanlan, Philadelphia, Pa., for appellee, Nacirema Operating Co., Inc.

Before BIGGS and KALODNER, Circuit Judges and VAN DUSEN, District Judge.

## OPINION OF THE COURT

BIGGS, Circuit Judge.

The appeal at bar is from a suit brought by Carroll, a longshoreman employed by Nacirema Operating Co., Inc., against Frontera Compania Naviera, S. A., the original defendant and the third-party plaintiff, for injuries sustained by him while unloading the S.S. Batis. Frontera brought Nacirema Operating Co., Inc., upon the record as a third-party defendant. The case was tried with a jury and a verdict was entered in favor of Carroll and against Frontera in the amount of $120,000. In the third-party action the verdict was rendered in favor of Nacirema and against Frontera. Judgments were entered accordingly. Frontera moved to vacate the judgments against it for judgment n. o. v., or in the alternative, for a new trial.

The operative facts are well set out in the opinion of the court below, 258 F. Supp. 747, 749 (1966), as follows: "At the time of the accident plaintiff was forty-seven years of age and was employed as a longshoreman in the capacity of a forklift operator. At the trial

plaintiff's evidence established that he was operating a forklift or chisel truck in the lower hold of Frontera's vessel, the SS Batis, as part of the operation of unloading packaged lumber at Pier 179 in Philadelphia. As plaintiff ran his forklift over a section of stowed packaged lumber, which appeared to him and other longshoremen to be a solid lumber floor, the two rear wheels of the truck suddenly broke through the top layer of the lumber. This caused the wheels to drop into a space or 'void' between bundles of lumber stow over which he was operating. When the wheels crashed through the boards in such fashion, plaintiff's body was jerked sharply forward against the steering wheel and then thrown to the rear, resulting in severe injuries to his back."

The question immediately arose as to what was the proper method of stowing drafts of packaged lumber aboard ship. Nacirema's expert witness, Hopen, testified that any open space or void between the drafts of lumber should be filled in at the loading port before the top boards of adjacent drafts were butted together to form the floor. This,

Hopen stated, enables the longshoremen at the port of discharge to rely on the floor's solidity and to unload cargo without having to move steel plates from place to place in the hold as unloading progresses. Frontera's expert witness, Keeler, stated that the proper method of *loading* permits voids between the drafts of lumber to remain unfilled and the top boards of adjacent drafts to be butted together, thus necessitating longshoremen at the port of *discharge* to shift plates constantly to cover all areas where the drafts come together in order to prevent breakthroughs. This was really the gist of the controversy between Frontera and Nacirema.[1]

Special interrogatories were submitted to the jury and are set out in note 2 below.[2] The Jury answered (a) that the Batis was unseaworthy; (b) Frontera was negligent; (c) the unseaworthiness and negligence were the proximate causes of Carroll's injuries; (d) Carroll was free of contributory negligence; and (e) Nacirema did not breach its warranty of workmanlike service in unloading the Batis.

---

1. No issue seems to have been presented by the parties in respect to possible contributory or comparative negligence on the part of Carroll on this appeal. In his opinion, 258 F.Supp. at 750, the trial judge stated: "The Court concurs with Nacirema that, on the facts presented, the jury would have had little difficulty finding that the plaintiff himself did not contribute to the accident although the concept of contributory [or comparative] negligence was explained in the Court's charge and was submitted to the jury upon special interrogatories."

2. 1. (a) Was the S.S. Batis unseaworthy?
   (b) If your answer to Question 1(a) is "yes", was that unseaworthiness a proximate cause of plaintiff's injuries?
   2. (a) Was the shipowner (Frontera Compania Naviera, S.A.) negligent?
   (b) If your answer to Question 2 (a) is "Yes", was that negligence a proximate cause of plaintiff's injuries?
   3. (a) Was William Carroll contributorily negligent?

   (b) If your answer to Question 3(a) is "Yes", was his contributory negligence a proximate cause of his injuries?
   4. Did the stevedoring company (Nacirema Operating Co., Inc.) by its agents or employees breach its warranty to perform its job in a safe, proper and workmanlike manner with reasonable safety under the circumstances?
   5. Did any fault described in Questions 1 and 2 (if you answered "Yes") result from any failure of the stevedoring company (Nacirema Operating Co., Inc.) to perform its obligation to discharge the cargo in a reasonably safe and workmanlike manner?
   6. If your answer to either Questions 1(a) and 1(b) or Questions 2(a) and 2(b) is "Yes"; or if your answer is "Yes" to all of them, then state the total amount of damages which you assess in favor of the plaintiff, after considering your answers to Questions 3(a) and 3(b).

It is well settled that the owner of a ship may be liable to indemnify a seaman, or a longshoreman, for an injury caused by the unseaworthiness of the vessel and that the shipowner cannot escape liability by delegating the loading or unloading function to an independent contractor such as Nacirema. Nor is it material that the unseaworthiness of the vessel or its equipment may arise from acts of the longshoremen crew, or indeed of the injured longshoreman. Thompson v. Calmar Steamship Corporation, 331 F.2d 657, 659 (3 Cir. 1964). It is also the law that while the duty of the shipowner is absolute to furnish a vessel and appurtenances reasonably fit for their intended use, the standard is not perfection but reasonable fitness. Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 550, 80 S.Ct. 926, 4 L.Ed. 2d 941 (1960). The answers of the jury to the interrogatories, assuming a proper charge, dispose of any issue as to whether Frontera was liable to Carroll. Frontera's complaint is that the charge of the court to the jury was such as to deny it justice and that, therefore, there must be a new trial. We turn, therefore, to this question.

The parties submitted numerous requests for charge. Frontera complains of a number of the requests made by Carroll and read by the trial judge to the jury. In our opinion, Frontera tries to exact too strict a standard. Frontera correctly points out that it is the law that while the duty of the shipowner is absolute to furnish a vessel and appurtenances reasonably safe for their intended use, the standard is not perfection, but reasonable fitness, citing Mitchell v. Trawler Racer, Inc., supra. The trial judge in what may be described as his general charge correctly defined the liability of the shipowner in respect to the ship and its equipment in relation to the stevedore. Frontera seems to insist, however, that the language of the general charge should have been incorporated in each of the specific requests submitted by Carroll and read to the jury. We cannot agree. It follows therefore that Carroll was entitled to recover against Frontera.

The substantial issues in the instant case arise in respect to the rights of Frontera against Nacirema. Frontera insists that Nacirema's requested charges 2 and 5 as submitted by the trial judge to the jury are improper because the words "reasonable, cursory, visual" were inserted before the word "inspection". The charges are set out below.[3]

Frontera itself requested a charge, Charge 10, which was amended by the addition of the word "reasonably" and the phrase "by vision" and by striking therefrom the language indicated in the footnote, so that the line of the charge read in pertinent part: "If you believe that Mr. Carroll continued to work under conditions such as improper placement of plates and failure to reasonably inspect by vision the area in which he worked * * *."[4] No objection was

---

**3.** As follows: "2. If you find that the stevedore used a proper method of operation in discharging the cargo; that the stevedore through its employees had no knowledge of a defect in the stowage of cargo nor could have discovered such defect in the stowage of cargo upon a visual inspection of the work area; and that the stevedore performed its services in a proper, safe and workmanlike manner with reasonable safety under the circumstances, then your verdict upon the claim of the defendant shipowner for indemnity should be in favor of the third-party defendant stevedore."

"5. If you find as a fact that a defect existed in the stowage of cargo which de-

fect was not discovered or could not have been discovered by the employees of the stevedore upon *reasonable, cursory,* visual inspection of the work area, then your verdict 'upon the claim of the shipowner for indemnity based upon the contention that the stevedore knew or should have known of the defect in the stowage of cargo should be for the third-party defendant stevedore."

We have italicized the words which amended the original request.

**4.** Charge 10 is as follows: "If you believe that Mr. Carroll continued to work under conditions such as [the defective forklift,] improper placement of plates and failure to *reasonably* inspect *by vi-*

made to Charge 10 as read by the trial judge to the jury. Unfortunately, the trial judge did not see fit to have a court reporter present when he passed upon the requests.[5] The trial judge stated, 258 F.Supp. at 752: "Unfortunately, the discussion by the Court with counsel of the proposed points for charge prior to their submission to the jury took place informally and without the aid of the Court Reporter. Consequently, nothing which transpired at that time appears in the trial transcript. However, my personal trial notes indicate that the attorneys for the respective parties all agreed that in order to avoid the possibility of reversible error, it would be wise to preface the word 'inspection' with the phrase 'reasonable, cursory, visual' since those three adjectives had been used by various courts, often interchangeably: D'Amico v. Lloyd Brasileiro Patrinonic Nationale, 354 F.2d 33 (2d Cir. 1965); Ignatyuk v. Tramp Chartering Corp., 250 F.2d 198 (2d Cir. 1957); Waterman Steamship Corp. v. Brady-Hamilton Stevedore Co., 243 F. Supp. 298 (D.C.Or.1965)." Unfortunately, we cannot treat this statement, even upon an analogy to Rule 75(d), Fed.R.Civ.Proc., 28 U.S.C., as an effective statement of the record. If the trial court had desired to correct or supplement the record, it should have made use of the technique set out in Rule 75 (d). Cf. England v. Gebhardt, 112 U.S. 502, 506, 5 S.Ct. 287, 28 L.Ed. 811 (1884), as modified by Loeb v. Columbia Township Trustees, 179 U.S. 472, 481–485, 21 S.Ct. 174, 45 L.Ed. 280 (1900).

An examination of the "trial notes" of the trial judge shows only longhand notations, written in pencil in the handwriting of the trial judge, on the requests for charge made by the respective parties. There is nothing conclusive as to the consent of the respective parties as to Charge No. 10 as requested by Frontera and as amended and submitted by the trial court to the jury or as to Requests Nos. 2 and 5 requested by Nacirema and as submitted by the trial court to the jury. In a futile attempt to determine whether or not the parties to the suit agreed that the charges in question were to be given as suggested by the trial judge from his notes and as set out in his opinion quoted above, the Clerk of the Court, as directed by the Court, communicated with counsel for the parties and asked them to inform the court as to whether or not they had agreed to the charges as given. These communications are made part of the record in this court. Frontera asserts that it did not agree to the charges as given. In view of all the circumstances we cannot assume that there was an agreement by all the parties as to the charges as given. In so stating we do not reflect on the court below or on counsel. Years have passed between the time of the trial and the present. Memory fades and is always deceptive. We must proceed on the basis that there was no agreement as to the charge respecting

---

*sion* the area in which he worked, and the conditions were known to him as likely to cause harm and he was hurt, you may find that Mr. Carroll was contributorily negligent and should deduct from any recovery whatever percentage you find he contributed to his own injury."

We have shown in the foregoing quotation in brackets the words stricken from Request No. 10 of Frontera and the words, italicized, as added by the trial judge and submitted to the jury. The dichotomy between Charge No. 10 as submitted by Frontera and Charge Nos. 2 and 5 as requested by Nacirema and submitted to the jury by the trial judge is

immediately apparent. See note 3, supra, second paragraph. The two charges, both given to the jury, are clearly inconsistent.

5. We disapprove this practice, which is bound as here to lead to difficulties in at least some instances. Cf. United States v. Sigal, 341 F.2d 837, concurring and dissenting opinion 840, 846 (3 Cir. 1965). It is true that Section 753(b), Title 28, U.S.C., provides that the presence of a court reporter is not required if the parties agree, with the approval of the judge, that the court reporter's services may be dispensed with. We perceive no such agreement here.

the kind of inspection of the lumber required to be made by Nacirema.[6]

■ We therefore turn, in the absence of an adequate supporting record as to the alleged consent of the parties to the charges as given, to a consideration of Charges 2 and 5, as set out in note 3, supra. The record is replete with references to the examinations of the lumber that were made, or should have been made, albeit sometimes in an oblique fashion.[7] Frontera relies on our decision in Dziedzina v. Dolphin Tanker Corp., 361 F.2d 120 (1966), but an examination of the opinion in that case shows that it is not apposite for it does not deal directly with an issue of inspection of cargo. Upon consideration we are forced to conclude that the use of the word "cursory" in Charge 5 as read to the jury was improper. Webster's New International Dictionary (2d ed.) defines the word "cursory" in a number of fashions, as, for example, "rapidly, often superficially, performed with scant attention to detail; passing hurriedly over or through something which invites exhaustive treatment." The synonyms given by the dictionary make it very clear that a "cursory" examination is an insufficient one, at least under the circumstances at bar. See Webster's Dictionary, supra, where "hasty, passing, evanescent, unmethodical, disconnected, irregular, fitful; rambling, roving" are given as synonyms for "cursory". We do not think that a hasty, passing, unmethodical, disconnected examination, given with scant attention to detail, is the examination required under the circumstances.

■ It seems on the present record that the examination would have to be a visual one for the portion of the tier of lumber which broke and through which Carroll's forklift fell was under the deck of the ship and it would be unreasonable to require other than a visual examination for a complete examination apparently could not have been effected without actual unloading of most of the lumber. As to this, our last observation, upon remand, the court below should develop further the issue of examination and our observation is not to be considered binding upon the court below or upon the parties. In our opinion, on the present record if the court below had charged that the examination was to be a visual examination of a kind which might be expected reasonably to disclose a danger lurking in the tier of lumber on which as a floor Carroll was operating his forklift the charge would have been sufficient. Absent such a charge, it is necessary to order a new trial insofar as Frontera and Nacirema are concerned. It is clear, however, that the judgment in favor of Carroll must and will be affirmed. The judgment against Frontera in favor of Nacirema on the third-party action will be reversed and the case remanded for a new trial of the third party complaint with the direction to proceed in accordance with this opinion.

6. Since appellant was approximately six months late in filing its brief, which was received on June 5, 1967, even though it was due on December 14, 1966, a condition of denying the pending motion to dismiss the appeal because of such delinquency will be that any amount which might ultimately be recovered by appellant from the third-party defendant will not bear interest for a six-month period. An order denying the motion to dismiss the appeal, subject to this condition, will be entered.

7. See Transcript, 249, 420, 421, 426, 433 and 440. See also the statement of Captain Hopen, Nacirema's expert witness on loading and unloading lumber from vessels (T.440): "[I]f he [the hatch boss] did not inspect for the [proper protection and safety of his gang] [the tiers of lumber], he would not have performed his duty."