Ellsworth Willie WYATT, Appellant,

v.

UNITED STATES of America, Appellee.

Chester CHANDLER, Appellant,

v.

UNITED STATES of America, Appellee.

Nos. 9589, 9590.

United States Court of Appeals
Tenth Circuit.

Jan. 2, 1968.

Chester H. Walter, Jr., Denver, Colo., for appellant, Ellsworth Willie Wyatt.

Arlen S. Ambrose, Denver, Colo., for appellant, Chester Chandler.

Robert L. Berry, Asst. U. S. Atty., Oklahoma City, Okl. (B. Andrew Potter, U. S. Atty., Oklahoma City, Okl., on the brief), for appellee.

Before MURRAH, Chief Judge, and HILL and SETH, United States Circuit Judges.

HILL, Circuit Judge.

Appellants, Wyatt and Chandler, were tried upon a seven count indictment charging six substantive violations of the internal revenue laws pertaining to non-tax-paid liquor (26 U.S.C. § 5601(a) (12), § 5604(a) (1), § 5205(a) (2) and § 5686(a)) and one count under 18 U.S.C. § 371, charging a conspiracy to violate some of the above mentioned statutes. A jury found Wyatt guilty on four of the substantive counts and Chandler guilty on two of the substantive counts and both were found not guilty on the remaining counts.

At the outset, both appellants point error to the trial court's refusal to grant their respective pretrial motions "to disclose the Grand Jury minutes" and "for bill of particulars." What they actually sought by the first motion was a transcript of the testimony adduced before the grand jury and not the minutes of the grand jury proceedings. It is admitted that there was no

record made of such testimony, therefore, a transcript could not be produced. In effect, they urge us to interpret Dennis v. United States, 384 U.S. 855, 86 S. Ct. 1840, 16 L.Ed.2d 973, as requiring the recording of all testimony taken before a grand jury. Little need be said upon this point because this court, after the Dennis decision and in McCaffrey v. United States, 10 Cir., 372 F.2d 482, expressly stated that "There is no requirement that grand jury proceedings be transcribed." Id. at 484. Also in Campbell v. United States, 10 Cir., 368 F.2d 521, which is indistinguishable from this case, we held that the failure to compel the production of grand jury testimony where there is no record of it is not reversible error.

■■■■■ In appellants' motion for bill of particulars, requests were made for information as to the manner in which each of the overt acts set forth in the indictment is alleged to be in furtherance of the alleged conspiracy and as to counts one to five of the indictment the information as to whom the non-tax-paid whiskey was sold to, who sold it to this person, and also where the whiskey was manufactured.[1] Since appellants were acquitted of the conspiracy charge we need not give any consideration to the part of the motion concerning the conspiracy. "The purposes of a bill of particulars are to inform the defendant of the nature of the charge against him with sufficient precision to enable him to prepare for trial, to avoid or minimize the danger of surprise at time of trial

and to enable him to plead his acquittal or conviction in bar of another prosecution for the same offense when the indictment itself is too vague and indefinite for such purposes." United States v. Haskins, 6 Cir., 345 F.2d 111, at 114. In the instant case the charges in the indictment set out the specific date, the specific amount of non-tax-paid whiskey involved and that the event occurred on or about a public street in Guthrie, Logan County.[2] The failure to set out to whom the sales in question were made does not make the indictment so vague that the failure to allow the bill of particulars as to this matter was an abuse of discretion by the district judge.[3] Appellants argue that under the · newly amended Rules of Criminal Procedure, 7(f)[4] the district court has no discretion but must provide for bills of particulars as a matter of course. However, in the notes of the Advisory Committee on Rules it is stated that "The amendment to the first sentence eliminating the requirement of a showing of cause is designed to encourage a more liberal attitude by the courts toward bills of particulars without taking away the discretion which courts must have in dealing with such motions in individual cases." It is, therefore, clear that the amendment did not make the granting of bills of particulars mandatory and the prior law that the granting of a bill of particulars is discretional with the district court is still applicable. E. g., Rose v. United States, 10 Cir., 128 F.2d 622, cert. denied, 317 U.S. 651, 63 S.Ct. 47, 87 L.Ed. 524; Cook v. United States, 9 Cir., 354

---

1. No charge involved the illegal manufacturing of whiskey and this information was irrelevant to the charges made. Additionally there is no indication that the Government had any information on this matter.

2. Counts two, four and six were possession violations and thus did not involve the sale to a third person and convictions under these counts would not be affected by the validity of appellants' argument here.

3. See e. g. Hedrick v. United States, 10 Cir., 357 F.2d 121; Enlow v. United States, 10 Cir., 239 F.2d 887.

4. "Rule 7. The Indictment and the Information.
 "* * *
 "(f) Bill of Particulars. This court may direct the filing of a bill of particulars. A motion for a bill of particulars may be made before arraignment or within ten days after arraignment or at such later time as the court may permit. A bill of particulars may be amended at any time subject to such conditions as justice requires. As amended Feb. 28, 1966, eff. July 1, 1966."

F.2d 529.[5] Moreover, it appears to us from the record that a preliminary hearing was held on October 20, 1966, in which both defendants and their counsel were present and at which time it was testified to as to whom and who sold the distilled spirits involved. Having such knowledge, appellants could in no way be prejudiced by the district court's denial of their motion for a bill of particulars.

Count number seven of the indictment alleged a conspiracy among appellants and Quinnon Chandler, Chester Chandler's brother, and Raymond Junior Adams. During the testimony of Treasury Agent, Cliff Carpenter, Jr., a statement of Quinnon Chandler was elicited. Objection was made to this testimony as being hearsay, however, the trial court overruled such objection on the grounds that "if he (Quinnon) is a member of the conspiracy his testimony is admissible". Appellants argue that since they were acquitted of the conspiracy charge no basis existed to support the admission of the above testimony; thus it was reversible error to admit the hearsay evidence into testimony. The statement objected to was: "At this time Quinnon Chandler told me he did not have a large quantity of whiskey for me to buy but that he could sell me a gallon. * * * He told me that he did have a gallon and a half of whiskey that he would sell me." The incident referred to occurred on July 14, 1966. Neither of the appellants was charged with any violation for events occurring on July 14 other than as these events related to the conspiracy charge.

Thus, the only relevance of the above statement was to the conspiracy charge. Since appellants were acquitted of the conspiracy charge the admission of the above statement could not in any respect be considered prejudicial and does not require the reversal of their convictions.

■ As a part of its case the Government introduced into evidence the materials purchased by Agent Carpenter who testified that the materials were non-tax-paid whiskey. Appellants objected to the admission of this evidence on the grounds that it was incompetent, irrelevant and immaterial, and further that no connection with the appellants was made and that the exhibits were not properly identified. This objection was overruled and the evidence was admitted. Appellants now urge that this constituted reversible error. Appellants argue that there was no clear testimony that the alleged non-tax-paid spirits were tested prior to their being placed in the United States Government vault for storage prior to trial. They further argue that the Government failed to establish a conclusive chain of evidence by showing that only the agent who brought the whiskey and the custodian of the United States Government vault had access to the whiskey.[6] It appears that the exhibits in question were taken by the agent who purchased them to the United States Government vault in Oklahoma City wherein they were kept until the trial.[7] The contents of these containers were not examined until their removal before trial, at which time they

---

5. In United States v. White, 7 Cir., 370 F.2d 559, a case decided subsequent to the amendment to the Federal Rules of Criminal Procedure, the court reiterated that the granting of the motion for bill of particulars is discretionary. The court noted, however, that the motion was made prior to the application of the amended Rule and thus did not expressly decide the effect of the amendment.

6. As support for the proposition that the Government must establish a complete chain of possession of the exhibits appellants cite numerous cases pertaining to blood sampling. E. g., Eisentrager v. State, 79 Nev. 38, 378 P.2d 526. Initial-

ly the question arises as to whether the same standard applies in cases of exhibits of non-tax-paid spirits as in cases involving samples that are taken from a human body. Compare 29 Am.Jur.2d, Evidence, § 775 and § 776. This question does not need to be resolved, however, as testimony was introduced at the trial that would serve as a complete rebuttal to appellants' arguments.

7. Cliff Carpenter, the principal Government witness, who purchased the non-tax-paid liquor placed in evidence, testified that he took his purchases directly to the Government vault in Oklahoma City.

were tested by sight, smell and taste and identified by the agents as moonshine liquor.[8] Appellants argue that two possibilities existed due to the alleged failure of proof by the Government, "One, that the alleged non-tax-paid spirits were not spirits at the time of their seizure and merely in some manner fermented during their several months in storage. Two, that person or persons unknown who had access to the vault in some manner tampered with the alleged non-tax-paid spirits."

An examination of the record, however, reveals that testimony was given that rebuts both of the possibilities hypothesized by appellants. George C. Gaither, the custodian of the Government vault, testified that no one molested the exhibits after they were placed in the vault for safekeeping. In response to a line of questioning brought out by appellants Mr. Gaither completely answered the argument presented on this appeal. Q. "Now anyone could screw the top off any of these containers at any time, could they not?" A. "Well, they would have to be in my presence." * * * Q. "I see, and of course, you are willing to swear that that wasn't done in your presence?" "Certainly."

Mr. Carpenter, the principal Government witness, was submitted to a series of questions concerning the difference between fermented alcohol and distilled alcohol. The following was included in this testimony. Q. "Now if you would please, explain to me, a layman, who knows nothing about it, the difference between the wine on one hand and this liquid, that enables you to say positively and beyond a reasonable doubt that this liquid contains distilled spirits when you can't say that about wine?" A. "Well, from my association in distilleries and association with moonshine whiskey, I definitely recognize this as

being moonshine whiskey without a doubt. Now, wine is through a process of fermentation and it too contains ethyl alcohol. It is true that the same ethyl alcohol is the same in the wine, it is the same in the moonshine whiskey, illegal whiskey, whether it be derived from ethylene gas, grain, or any other derivative, but, from my association with non-tax-paid distilled spirits, I can definitely say that this is moonshine whiskey." Q. "All right now, can you tell us positively that this is the same liquid in these containers that was in there at the time you took them, as you say, from the various containers here?" A. "To the best of my knowledge, it is." Thus it was shown that the specimens were not tampered with and that the liquor therein was not a result of fermentation. In light of this testimony it is difficult to see how appellants' argument has any merit at all.

Lastly, appellant Chandler attacks the sufficiency of the evidence to sustain his conviction on both Counts three and four. Count three specifically charged him with aiding and abetting in the sale of non-tax-paid liquor to Agent Carpenter on August 14, 1966. Count four charged him with possession of non-tax-paid liquor on the same date. The trial judge gave Chandler a sentence of three years on Count three and one year on Count four, with the sentences to run concurrently.

 Carpenter, an undercover agent and the Government's witness, testified that on August 14 he went to "Sonny Boy's" place in Guthrie, Oklahoma, and there he contacted Sonny Boy and asked him if he could buy some whiskey. Sonny Boy, not having any whiskey, directed him to go see Quinnon Chandler. Carpenter testified that he did go to the residence of Quinnon Chandler. Further: "When I arrived, I walked

---

**8.** There is authority to the effect that testimony based on taste, sight and smell as to the unlawful content of liquor is admissible in evidence and its weight is for the jury. See Atles et al. v. United States, 3 Cir., 50 F.2d 808, 78 A.L.R. 435; 20 F.R.D. 329, "Expert Witnesses in Federal Criminal Procedure" by Lester B. Orfield, Member of Supreme Court Advisory Committee on Rules of Criminal Procedure.

up to the front door and knocked and was invited into the house. Inside the house I observed Chester Chandler and Quinnon Chandler, they said they were glad to see me and told me to come out in the garage and see what they had. I walked out into the garage with Quinnon Chandler and Chester Chandler and observed seventeen and one-half gallons of moonshine whiskey inside the garage. After a brief conversation, I agreed to purchase six gallons of whiskey that night. After the agreement was made, Quinnon Chandler took two gallons, Chester Chandler took the four gallons in the case and placed them in the front of my vehicle, which was a Corvair with a trunk in the front. After the six gallons of whiskey was placed in the, in my vehicle, I asked Quinnon Chandler how much I owed him for the six gallons of whiskey, and he replied $36.00. I then paid Quinnon Chandler $36.00 for the six gallons of non-tax-paid whiskey, non-tax paid spirits." To be guilty of the crime of "aiding and abetting" one does not have to have an active stake in the outcome of the crime but merely participate therein. See Bacon v. United States, 10 Cir., 127 F.2d 985. Clearly and without any doubt, appellant Chandler participated here to the extent of helping his brother carry the illegally sold alcohol to the purchaser's car.

Chandler's presence at the residence of his brother on August 14 is not just an isolated instance of him being present when the law was being violated so as to make him an innocent bystander. Other evidence in the case shows that he was on the same premises on July 14 when Carpenter made a purchase of liquor from Quinnon. The evidence also shows that on July 19 Chester participated in the transportation of eighteen gallons of non-tax-paid liquor in appellant Wyatt's car from an undisclosed place to the same residence and on that occasion assisting in unloading the liquor from the Wyatt car and loading it into Agent Carpenter's vehicle. On this occasion Chester also was assisting in unloading parts of a dissembled still from the Wyatt car and

placing those parts in the garage on the same premises. In addition Chester, on several occasions, was with his brother Quinnon on the premises where appellant Wyatt operated a tavern and at times when conversations concerning illegal liquor sales were had. All of the evidence in the case, taken as a whole, was sufficient for the jury to conclude that Chester not only aided and abetted his brother in the sale of the six gallons of illicit liquor but also that he had an interest in it.

Affirmed.