**UNITED STATES of America,**

v.

**Hugh R. CONWAY, George M. Lebosky, Robert Davidoff, Hugh R. Conway, Appellant in No. 17,369, George M. Lebosky, Appellant in No. 17,391.**

**Nos. 17369, 17391.**

United States Court of Appeals
Third Circuit.

Argued June 20, 1969.

Decided Aug. 19, 1969.

---

Robert F. Dato, Kovacs, Anderson, Horowitz & Rader, Perth Amboy, N. J., Carl J. Kaditus, Newark, N. J., for appellants.

George J. Koelzer, Asst. U. S. Atty., Newark, N. J. (David M. Satz, Jr., U. S. Atty., Newark, N. J., on the brief), for appellee.

Before HASTIE, Chief Judge, and McLAUGHLIN and VAN DUSEN, Circuit Judges.

OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

Appellants, Conway and Lebosky (hereinafter referred to as defendants), challenge judgments of conviction entered on both counts of a two-count indictment charging them and one other, Davidoff, with violations of 18 U.S.C. § 2113(a) and (d).[1]

On August 18, 1967, the Carteret Bank and Trust Company, a member of the Federal Reserve System, the deposits of which were insured by the F.D.I.C. and which is located in Carteret, New Jersey, was robbed by two armed men. While one stood guard by the entrance, the other circled behind the tellers' windows and ordered that a paper bag be filled with money. The robbers left with a total of $26,877.82. The next day, defendants Conway and Lebosky were arrested. They had been implicated by Davidoff, who was already in custody and had admitted driving the get away car.

Defendants were jointly tried in March of 1968. Davidoff testified against them as a witness for the Government. After their conviction, defendants were both sentenced to 15 years on each count of the two-count indictment, the sentences to run concurrently. On this appeal defendants attack their convictions on a variety of grounds.

## I. Denial of a Preliminary Hearing

■ Defendants urge that they were unlawfully deprived of a preliminary hearing. After being arrested on August 19, 1967, they were indicted on September 14 and pleaded not guilty at their arraignment on October 6. No preliminary hearing was ever held, though defendants, both before and after indictment, made efforts to secure one.[2] In this Circuit it has been held that the purpose of a preliminary hearing is to afford an arrested person a prompt determination as to whether there is probable cause to hold him for grand jury action. Rivera v. Government of Virgin Islands, 375 F.2d 988 (3rd Cir. 1967). This purpose is served, and the hearing rendered unnecessary, by the return of an indictment. Rivera, supra; see Jaben v. United States, 381 U.S. 214, 220, 85 S. Ct. 1365, 14 L.Ed.2d 345, rehearing denied, 382 U.S. 873, 86 S.Ct. 19, 15 L.Ed. 2d 114 (1965). Nor, we think, is it controlling that a pre-indictment request for such a hearing was made here. See United States v. Universita, 192 F.Supp.

1. 18 U.S.C. § 2113(a) and (d) contain this language:

"(a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, or any savings and loan association  *  *  *

\*     \*     \*     \*     \*

"Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

\*     \*     \*     \*     \*

"(d) Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both."

Davidoff pleaded guilty to count one and has been committed under the Youth Correction Act, 18 U.S.C. § 5010(b). Count two was dismissed in the case against him.

2. Prior to indictment, defendants petitioned for a preliminary hearing by means of a handwritten affidavit served upon a United States Commissioner on August 23.

Subsequent to indictment, Conway moved on October 17 to dismiss it for failure to afford a preliminary hearing, or in the alternative for the furnishing of such a hearing. This motion was denied on November 14. Conway made a later, and also unsuccessful, attempt to force such a hearing by way of a petition for mandamus filed in this court, which was denied on February 21, 1968. For purposes of argument, we have assumed that Lebosky joined in these post-indictment attempts to secure a preliminary hearing, though in fact he failed to do so.

154 (S.D.N.Y.1961). United States ex rel. Wheeler v. Flood, 269 F.Supp. 194 (E.D.N.Y.1967), which granted a pre-indictment petition to compel a preliminary hearing, does not support defendants' position. In *Wheeler*, the United States Attorney had begun presenting evidence to the Grand Jury the day before the return date of an order, obtained by petitioners, directing the Government to show cause why a preliminary hearing should not be held. The court there held that "[i]t was unreasonable in this case to delay a preliminary hearing for incarcerated accuseds beyond the time the United States was prepared to present the matter to the Grand Jury." 269 F.Supp. at 198. We find no record indication in the instant case that the Government was prepared to, or did, present evidence to a Grand Jury at the time defendants' request was served upon the United States Commissioner.

Defendants, however, citing several District of Columbia Circuit decisions,[3] urge us to adopt a discovery function for the preliminary hearing. They argue that reversible error is present where "it is subsequently determined at the time of trial that [a defendant] * * * was unfairly exposed to or surprised by the introduction of evidence that he could have successfully rebutted if he had a pre-trial hearing * * *." To the extent that the cases relied on by defendants establish the preliminary hearing as an independent vehicle for discovery in all federal criminal prosecutions, we decline to follow them.[4] In any event, the "evidence" by which defendants claim they were unfairly surprised—that there was an additional witness to the robbery and that not all the money found on Conway at his arrest came from the Carteret Bank—was not introduced at trial, nor would it have been pertinent to the issue of probable cause for defendants' arrest for this robbery, which would have been the subject of any preliminary hearing. Compare United States v. Cowan, 396 F.2d 83, 88 (2nd Cir. 1968).

II. *Denial of a Bill of Particulars*

Defendants complain of the denial of Conway's [5] October 16 motion for a bill of particulars under Rule 7(f), as amended in 1966, of the Federal Rules of Criminal Procedure. They correctly point out that the amendment was intended to liberalize the court's attitude towards bills of particulars. See Notes of Advisory Committee on Rules, Rule 7 (f) of Federal Rules of Criminal Procedure, as amended July 1, 1966. However, the Committee, as well as the federal courts, have made clear that amended Rule 7(f) leaves undisturbed the discretionary nature of the granting of a bill of particulars. See, e. g., Wyatt v. United States, 388 F.2d 395 (10th Cir. 1968); Walsh v. United States, 371 F.2d 436 (1st Cir.), cert. den. 387 U.S. 947, 87 S.Ct. 2083, 18 L.Ed.2d 1335 (1967). We find no abuse of such discretion in

---

3. E. g., Ross v. Sirica, 127 U.S.App.D.C. 10, 380 F.2d 557 (1967); Holmes v. United States, 125 U.S.App.D.C. 187, 370 F.2d 209 (1966); Crump v. Anderson, 122 U.S.App.D.C. 173, 352 F.2d 649 (1965); Blue v. United States, 119 U.S.App.D.C. 315, 342 F.2d 894, cert. den. 380 U.S. 944, 85 S.Ct. 1029, 13 L.Ed.2d 964 (1965).

4. Other Circuits which have discussed the functions of a preliminary hearing would appear to agree with our conclusion that its purpose is to afford a determination of probable cause. See Sciortino v. Zampano, 385 F.2d 132 (2nd Cir. 1967) (expressly declining to adopt the rule of Ross v. Sirica, *supra*), cert. den. 390 U.S. 906, 88 S.Ct. 820, 19 L.Ed.2d 872 (1968);

United States v. Chase, 372 F.2d 453, 467 (4th Cir.), cert. den. 387 U.S. 907, 913, 87 S.Ct. 1688, 18 L.Ed.2d 626 (1967); United States v. Smith, 357 F.2d 318, 320 (6th Cir. 1966); United States v. Amabile, 395 F.2d 47, 53–54 (7th Cir. 1968); Spinelli v. United States, 382 F.2d 871, 887 (8th Cir. 1967), reversed on other grounds, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); Bayless v. United States, 381 F.2d 67, 71 (9th Cir. 1967); Swingle v. United States, 389 F.2d 220, 223 (10th Cir.), cert. den. 392 U.S. 928, 88 S.Ct. 2285, 20 L.Ed.2d 1386 (1968).

5. For purposes of argument, we have assumed that Lebosky participated in this motion, though in fact he did not.

the District Court's denial here. Conway's motion requested inter alia, the names of all employees of the bank and of all eye witnesses to the robbery, as well as a detailed description of the stolen money which had been recovered. However, it is not the function of a bill of particulars to disclose the names of Government witnesses in a case such as this. See United States v. Stahl, 393 F. 2d 101 (7th Cir.), cert. den. 393 U.S. 879, 89 S.Ct. 181, 21 L.Ed.2d 152 (1968); United States v. Margeson, 261 F.Supp. 628 (E.D.Pa.1966). Nor should it function to disclose evidentiary material. See Hemphill v. United States, 392 F. 2d 45 (8th Cir.), cert. den. 393 U.S. 877, 89 S.Ct. 176, 21 L.Ed.2d 149 (1968); United States v. Jaskiewicz, 278 F.Supp. 525 (E.D.Pa.1968). The proper means for obtaining a description of the money would have been a motion for discovery under Rule 16 of the Federal Rules of Criminal Procedure.

### III. *The Pre-Trial Identifications*

■ In a two-pronged argument, defendants contend that under the doctrine of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), they were entitled to counsel when their pictures were identified by witnesses to the robbery, and also that such identifications were so unnecessarily suggestive as to violate due process. Several days after the crime, when defendants had been taken into custody, witnesses were

shown photographs by F. B. I agents and identified pictures of Conway and Lebosky as depicting the two robbers. No indictment had been returned at that time. At trial the Government elicited in-court identifications from these witnesses, who were cross-examined by defendants' counsel concerning the photographic identification procedures.[6]

We hold that *Wade* and *Gilbert* do not apply in these circumstances, since these pre-indictment photographic identifications were not a "critical stage" of the prosecution where the presence of counsel could meaningfully have preserved defendants' rights to a fair trial. See United States v. Bennett, 409 F.2d 888, 899–900 (2nd Cir. 1969); United States v. Marson, 408 F.2d 644, 649–650 (4th Cir. 1968) (dictum); McGee v. United States, 402 F.2d 434 (10th Cir. 1968), cert. den. 394 U.S. 908, 89 S.Ct. 1020, 22 L.Ed.2d 220 (1969); United States v. Clark, 289 F.Supp. 610, 620–621 (E.D. Pa.1968).[7] There was no form of confrontation here nor, indeed, was any communication from defendants compelled or their presence even required. See Wade v. United States, *supra,* 388 U.S. at 227, 87 S.Ct. 1926; McGee v. United States, *supra.* Compare Gilbert v. California, *supra,* 388 U.S. at 266–267, 87 S.Ct. 1951; Schmerber v. California, 384 U.S. 757, 763–764, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). The fact that defendants were in custody at the time of the identifications we do not regard as controlling on this record. See United States v. Bennett, *supra;* United States v. Marson, *supra.*[8] The photographs

---

6. This is the recognized method for ascertaining impropriety in such procedures. See United States v. McKenzie et al., 414 F.2d 808 (3rd Cir., 1969). Compare Wade v. United States, *supra,* 388 U.S. at 220, 87 S.Ct. 1926.

7. Accord, Baldwin v. State, 5 Md.App. 22, 245 A.2d 98 (1968); State v. Starney, 3 N.C.App. 200, 164 S.E.2d 547 (1968). Contra, Thompson v. State, 451 P.2d 704 (Nev.Sup.Ct.1969); Note, "Photo-Identifications," 43 N.Y.U.L.Rev. 1019 (1968).

8. Many jurisdictions have held that *Wade* does not extend to prompt, on-scene confrontations between a suspect and a witness to a crime, though by definition the suspect is in custody at that time. See, e. g., Russell v. United States, 408 F.2d 1280 (D.C.Cir.1969); United States v. Davis, 399 F.2d 948 (2nd Cir.), cert. den. 393 U.S. 987, 89 S.Ct. 465, 21 L.Ed. 2d 449 (1968); State v. Boens, 8 Ariz. App. 110, 443 P.2d 925 (1968); State v. Bratten, 245 A.2d 556 (Del.Superior Ct.1968); Com. v. Bumpus, 238 N.E.2d

were shown to the witnesses about a week after the robbery, when defendants had been under arrest for only a matter of days,[9] and were incarcerated in the Federal Detention Center at New York City, which is the normal place for confining federal defendants from northern New Jersey and which is approximately 20 miles from Carteret, New Jersey.

This is not to say that the arrest and confinement of a suspect may never mark the moment when *Wade* and *Gilbert* come into play. See United States v. Wade, *supra*, 388 U.S. at 250–259, 87 S.Ct. 1926 (dissenting opinion of Justice White); Clemons v. United States, 408 F.2d 1230, 1237 (D.C.Cir. 1968); Rivers v. United States, 400 F.2d 935, 939 (5th Cir. 1968). The majority opinions in *Wade* and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), the case dealing with *Wade's* retroactivity, contain language indicating that "confrontations" conducted before arraignment or indictment may be a "critical stage." See United States v. Wade, *supra*, 388 U.S. at 227–230, 236–237, 87 S.Ct. 1926; Stovall v. Denno, *supra*, 388 U.S. at 298, 87 S.Ct. 1967. Cf. Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). We do not indicate that any of the other factors described above, particularly whether an accused has counsel,[10] should ever be

solely determinative of when a prosecution enters that stage. All we hold here is that under the circumstances of this case, including our conclusion below that the pictures were displayed in a manner consistent with due process, the presence of counsel at the photographic identifications was not necessary to meaningfully protect defendants' rights to a fair trial.

■ The independent contention that the identification procedure violated due process must be evaluated in light of the totality of the circumstances. Simmons v. United States, 390 U.S. 377, 383, 88 S. Ct. 967, 19 L.Ed.2d 1247 (1968); Stovall v. Denno, *supra*, 388 U.S. at 302, 87 S.Ct. 1967. There is nothing intrinsically unconstitutional about the technique of photographic identification; rather, each case it to be evaluated on its own facts. Simmons v. United States, *supra*, 390 U.S. at 384, 88 S.Ct. 967. In the instant case, since they were in custody at the time their pictures were displayed to witnesses, defendants question the necessity of that means of identification. Compare Stovall v. Denno, *supra*. However we think that necessity is only one factor in the total inquiry, see Simmons v. United States, *supra;* United States v. Clark, 294 F.Supp. 44, 49–50 (D.C.D.C. 1968); United States v. Washington, 292 F.Supp. 284, 287–288 (D.C.D.C.1968), and that, even if the existence of alter-

343 (Supreme Jud.Ct. of Mass.1968); State v. Satterfield, 103 N.J.Super. 291, 247 A.2d 144 (1968).

9. In United States v. Marson, *supra*, the photographic identfications took place some six weeks after the crime, when defendants had been in custody for over a month and had been afforded a preliminary hearing.

10. Apparently Conway and Lebosky had not been assigned counsel when their pictures were identified by Meyers, one of the three bank employees to whom they were shown nor, very possibly, when the other two employees were shown the pictures. The orders appointing counsel for defendants are dated August 22, 1967, four days after the robbery. The two employees testified that they were shown the photographs "a little longer" than a "couple days," and "several days later,

or maybe a week or so," after the crime. With reference to the Government's contention before us that it would be "impractical, if not impossible" to provide counsel during photographic identifications, it often might not be impractical to effect such representation whenever suspects in custody have already been assigned counsel by the time their pictures are to be shown to eye witnesses. We note, however, that photographic identification was not the type of confrontation at issue in *Wade*, where the Court recognized that certain "preparatory step[s] in the gathering of the prosecution's evidence * * * are not critical stages since there is minimal risk that his counsel's absence at such stages might derogate from his right to a fair trial." 388 U.S. at 227–228, 87 S.Ct. at 1932.

native means of identification can be conceded here, the total absence of suggestiveness in the conduct of these photographic identifications resolves the issue of due process in the Government's favor. Compare United States v. Clark, *supra* (D.C.D.C.). As in *Simmons*, this robbery took place in the daylight hours, the perpetrators wearing no masks. The witnesses were able to observe the robbers for a period of at least two or three minutes. The man who came behind the tellers' windows (later identified as Lebosky) was face to face with the employees there; the man by the door (later identified as Conway) was about 20 feet away. About a week after the robbery, three of the employees who had been in the tellers' area at the time were individually shown a group of from four to six photographs. All three chose Lebosky's picture as depicting the robber closest to them; one, Meyers, also chose Conway's as depicting the one who stood guard. There is no indication that either's picture was in any way emphasized during the display or that the F. B. I. agents told the bank employees anything before or during it that could be construed as suggestive.[11] Compare People v. Slutts, 259 Cal.App. 2d 886, 66 Cal.Rptr. 862 (1968). On this record, we cannot conclude that "the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, *supra*. See United States v. Marson, *supra;* United States v. Butler, 405 F.2d 395 (4th Cir. 1968); United

States v. Clark, *supra* (E.D.Pa.), 289 F. Supp. at 621–623. Nor have we found any evidence that the circumstances of the in-court identifications were improper. Compare United States v. Moss, 410 F.2d 386 (3rd Cir. 1969).[12]

**IV. The Money Found on Defendants at Their Arrest**

■ Defendants argue that the money recovered from them was not properly shown by the Government to have come from the Carteret Bank. Of a total of $26,877.82 stolen from the bank, F. B. I. agents testified to having recovered $17,-159.25. They stated that Conway and Lebosky were carrying, respectively, $2,-854. and $2,669.97 in cash when they were arrested the day after the robbery. An additional sum of $2,660. was said to have been found in a railroad station locker for which Lebosky had the key. Although a bound packet of $500. in marked bills was among the money taken from the bank, none of these bills were found in the possession of defendants.

In his opening statement to the jury, the United States Attorney declared that most of the loot, "about $17,000." had been recovered. He subsequently introduced into evidence two sealed packages said to contain $17,159.25 in cash. Defendants apparently contend that, having done this, the prosecutor was required to prove conclusively that the money found on them was bank money. We cannot agree. The jury never saw the money in the packages, which remained sealed by agreement of counsel.[13] Considerable

---

11. However, Conway contends that after Meyers had chosen his and Lebosky's pictures, she was informed of the significance of having done so. The record is not clear as to exactly what she was "told," and it is just as consistent with her testimony that she was later told that she identified the photographs of both defendants "on the same day." Assuming that she was "told" that she had identified the individuals whom the F. B. I. already suspected of committing the robbery, we do not believe this record shows an improper effect on Meyers' in-court identifications of defendants, though we do not approve the practice of telling

witnesses afterward how the prosecution believes they have performed in a test of identification.

12. The reliability of this eyewitness identification, which we have found admissible, was a matter for the jury. See Foster v. California, 394 U.S. 440, n. 2, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969).

13. Counsel for defendants did object to the receipt in evidence of the sealed packages of money on the ground that there was "nothing to identify" most of the currency as coming from the bank. This objection was overruled. See next sentence of text and footnote 14.

circumstantial evidence was introduced from which the jury was entitled to infer that substantial sums of money in defendants' possession had come from the Carteret Bank.[14] See United States v. McKenzie, *supra*, at footnote 6.

It also appears that $1,600. of the money in Conway's possession when he was arrested actually belonged to an individual named Golub, from whom it had been stolen the night before the bank robbery. This fact was not brought out during the trial, and it is not clear from the record whether this $1,600. was part of the money introduced into evidence in sealed packages. We fail to see how Conway was prejudiced, since there remained a sum of $1,254. which had also been found upon him and which the Government claimed came from the Carteret Bank.[15]

## V. *Statements Made to the Local Police*

▆ Defendants allege prejudice in the failure of their counsel to gain possession at trial of certain information allegedly in the possession of the F. B. I., which they contend could have been used to impeach Davidoff's testimony and enable them to persuade the jury that none of the money in defendants' possession belonged to the bank (pp. 36–38 of Lebosky brief; pp. 41–43 of Conway brief). The local Perth Amboy, New Jersey, police and the F. B. I. were conducting simultaneous investigations of the Golub robbery and the Carteret Bank robbery, respectively. Apparently the groups were utilizing the same headquarters and in both investigations defendants, along with Davidoff, were suspects. On August 19, Davidoff gave a statement to the F. B. I. agents (later made available to defendants' counsel at trial under the Jencks Act, 18 U.S.C. § 3500) in which he admitted driving the getaway car for Conway and Lebosky while they robbed the Carteret Bank. However, it appears that the local police were independently taking statements and compiling their own reports. One of these reports states that Golub had identified as his $1600. of the money found on Conway when he was arrested. It will be recalled that this fact was not brought out before the jury. Indeed, various statements of the United States Attorney during trial, as well as the testimony of F. B. I agents, outline a Government position that all the money found on Conway, as well as that in the sealed packages, had been stolen from the bank. Other reports of the local police state that Davidoff had admitted to receiving $200. in cash from Conway and Lebosky the night Golub was robbed and to taking part in a bank robbery in Carteret the next day, in which Conway was masked and Lebosky carried an empty gun. In the F. B. I. report given to defendants' counsel at trial, however, the only money Davidoff admitted to receiving from defendants was $4,000 immediately after the bank robbery. Furthermore, in the F. B. I. report and again at trial, Davidoff did not

14. Davidoff testified that on the morning of the robbery defendants told him they were going to rob a bank, that at their request he drove them to the Carteret Bank, which they entered with guns, that upon their reappearance he drove them to his stepbrother LaBranche's house, where defendants spread "almost twenty-seven" thousand dollars from a paper bag onto a couch. LaBranche testified that defendants, with whom he was acquainted, stayed at his house the night of August 17, left the morning of August 18, and returned that afternoon with Davidoff and a "sack" full of money which they spread over a "whole" couch. According to LaBranche, Conway then said, "I just robbed a bank." The pack-

et of marked bills was later discovered sewn into the lining of a coat belonging to LaBranche. Other substantial, though unmarked, sums of money were found on Davidoff and in the possession of his girlfriend ($3,867.25), in a car owned by LaBranche's sister-in-law ($1,944.), and on Conway's brother ($1,791.).

15. With reference to the letters of July 7 and July 23 received from Conway's counsel, we note that this court does not, in making its decisions, consider any matters which are not of record in the District Court. See Carroll v. Frontera Compania Naviera, 390 F.2d 311, 315 (3rd Cir. 1968). Oral statements of counsel during an appellate argument are clearly not matters of record.

mention whether Conway was masked or Lebosky's gun was loaded, though his testimony included a detailed description of Conway's physical appearance during the robbery, and a statement that both Conway and Lebosky had been carrying guns.[16]

Defendants claim that in view of the simultaneous investigations, it must be assumed the F. B. I. knew in advance of trial of the various statements made to the local police. They further maintain that such alleged knowledge of the F. B. I. was attributable to the United States Attorney and that since counsel for defendants were not apprised of the inconsistent statements contained in the local police reports until after their conviction the resulting prejudice requires that a new trial be granted. Cf. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). We have found no evidence in the record that the F. B. I. knew the contents of the reports compiled by the local police. Even if it did, such knowledge should not necessarily be imputed to the prosecutor who later tried the case. The record here supports the conclusion that the United States Attorney conducted this prosecution in good faith, ignorant of the above-mentioned statements which had been made to the local police. Indeed, the United States Attorney pointed out during argument on post-trial motions that any mention of the Golub money at trial might have been cause for a mistrial.

### VI. The Post-Conviction Affidavits

■ While this appeal was pending, defendants lodged with this court on June 12, 1969, affidavits of two individuals which alleged that Davidoff told the affiants after defendants' trial that he had testified falsely. Since such allegations relate to newly discovered evidence, they are properly the subject of a motion for a new trial based on such evidence, filed in the District Court. See Rule 33, Federal Rules of Criminal Procedure. See Richardson v. United States, 360 F. 2d 366 (5th Cir.1966).

### VII. Alleged Error in Verdict and Sentencing of Defendants for Crimes Under Both 18 U.S.C. § 2113(a) and 18 U.S.C. § 2113(d)

■ Separate consecutive sentences cannot be given under the subsections of 18 U.S.C. § 2113 since "there was no indication that Congress intended also to pyramid the penalties" of § 2113. See Prince v. United States, 352 U.S. 322, 327, 77 S.Ct. 403, 406, 1 L.Ed.2d 370 (1957). Furthermore, the Supreme Court has recently held that "there is no jurisdictional bar to consideration of challenges to multiple convictions, even though concurrent sentences were imposed." Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (6/23/69). See United States v. McKenzie, supra. For purposes of sentencing,[17] an offense under 18 U.S.C. § 2113(a) becomes merged with the more aggravated offense under 18 U.S.C. § 2213(d). See Lynch v. United States, 364 F.2d 313 (9th Cir. 1966). Under these circumstances, we will direct the District Court to reword the sentences to show that they are imposed only under Count 2 of the indictment, which count charges the offense under 18 U.S.C. § 2113(d). Cf. Audett v. United States, 265 F.2d 837, 848 (9th Cir.), cert. den. 361 U.S. 815, 80 S.Ct. 54, 4 L.Ed.2d 62, rehearing den.

---

16. The four witnesses to the robbery who testified for the Government asserted that both the perpetrators had been carrying guns, except that two of these witnesses were not sure about the man by the door, later identified as Conway. The jury was justified in inferring from such testimony that both guns were loaded, so as to support a conviction for "put[ting] in jeopardy the life of any person by the use of a dangerous weapon * * *" under 18 U.S.C. § 2113(d). See United States v. Roach, 321 F.2d 1 (3rd Cir. 1963).

17. After careful review of the charge, we have concluded that there is no "plain error" (see Rule 52(b) of Federal Rules of Criminal Procedure), as contended under items VII of Lebosky's brief and Nine of Conway's Brief.

361 U.S. 926, 80 S.Ct. 290, 4 L.Ed.2d 241 (1959).

## VIII. *Alleged Failure to Direct a Mental Examination of Defendant Conway*

 On February 28, 1968, Conway filed a motion for a psychiatric examination pursuant to 18 U.S.C. § 4244 and stated in such motion, "In the alterative, defendant * * * will apply for an Order granting said defendant an immediate and speedy trial * * *." This motion also stated that it would be brought before the court on March 11. Since this motion was not filed 20 days prior to the return day of March 11, as required by the District Court rules, it was listed for hearing on March 25. At the start of the trial on March 12, this pending motion was brought to the attention of the trial judge (p. 16 of Conway brief), who denied it, without prejudice, on the ground that the alternative motion of a speedy trial was being granted. Conway's counsel contends that he made clear to the judge on March 12 that the speedy trial alternative was only requested if the psychiatric examination was denied (p. 17 of Conway brief), but concedes that this "colloquy" with the judge was off the record. Such alleged occurrences which are not on the record cannot be considered on appeal.[18] Furthermore, since the motion filed February 28 makes only alternative requests and the affidavit in support of the motion concedes that Conway "drank in such excess" that he remembers nothing during the period of the robbery, his motion to "undergo psychiatric examination for the purpose of permitting a physician to treat me in a hope that as a result of said treatment I would recall my activities of the day on which I am accused of robbing the bank," did not disclose sufficient likelihood of successful mental treatment to indicate that a request on the first day of trial for such psychiatric "treatment," as opposed to an examination to determine his mental competency to assist in his own defense, was contemplated by 18 U.S.C.

§ 4244. See United States v. Becera-Soto, 387 F.2d 792, 795–796 (7th Cir. 1967), cert. den. 391 U.S. 928, 88 S.Ct. 1819, 20 L.Ed.2d 669 (1968); Manning v. United States, 371 F.2d 811, 813 (10th Cir.), cert. den. 387 U.S. 924, 87 S.Ct. 2041, 18 L.Ed.2d 980 (1967).

We have carefully considered the other contentions made by defendants and find them to be without merit.

The judgments of conviction will be amended by the District Court to read as follows and, as so amended, they will be affirmed:

"It is adjudged that the defendant is hereby committed to the custody of the Attotrney General or his authorized representative for imprisonment for a period fo Fifteen (15) Years from May 3, 1968, on Count 2."

---

18. See Carroll v. Frontera Compania Naviera, *supra*, at footnote 15.