UNITED STATES ex rel. Earl Thomas
SADLER

v.

UNITED STATES of America.

Civ. A. No. 68-12.

United States District Court,
E. D. Pennsylvania.

March 31, 1970.

Ross Crumlish, Philadelphia, Pa., for petitioner.

Louis C. Bechtle, U. S. Atty., Victor Wright, Asst. U. S. Atty., Philadelphia, Pa., for respondent.

## OPINION

HIGGINBOTHAM, District Judge.

### I.

Earl Thomas Sadler, presently incarcerated at the United States Penitentiary at Lewisburg, Pennsylvania, has petitioned this court to vacate his sentence. This sentnce was imposed after his plea of guilty to a four-count indictment charging violations of the Federal Bank Robbery Act, 18 U.S.C. § 2113(a), (b) and (d). On July 20, 1966 he was sentenced to a term of eight (8) years on count one. The sentence on counts two, three, and four was a five-year concurrent term and that sentence was to run consecutively to the sentence under count one. The execution of the five year sentence was suspended, and the defendant was placed on probation for a period of five years subsequent to the sentence on count one. The factual and legal ramifications of the consecutive five year sentence of probation on counts two, three and four will be dealt

**1378**

with in greater detail in Section III, infra of this opinion.[1]

The petitioner makes the following multiprong challenges as grounds for the vacation of his sentence under 28 U.S.C. § 2255:

(1) That it was a violation of due process to sentence him on the federal offense prior to the completion of his previously imposed state sentence for separate, unrelated, and prior crimes.

(2) That he was denied the opportunity to "have made objections or challenges to the array of grand jurors" before his arraignment and plea to the indictment. It should be noted that he never made any request to challenge or object to the array of the grand jurors.

(3) That he was not afforded an opportunity to confront his accusers.

(4) That he was mentally incompetent at the time of the bank robbery, at his arrest, when he made statements, and when he plead guilty because he was at all those times under the influence of narcotics.

(5) That by reason of the sentences imposed on counts two, three and four, he was placed "twice in jeopardy for primarily the same offense."

Because of the importance of the legal issues raised, Ross Crumlish was appointed as counsel for petitioner. Though not financially compensated, Mr. Crumlish has represented the petitioner with extraordinary diligence. He amended petitioner's original complaint to allege with far greater precision the grounds for relief and subpoenaed for the initial hearing Boston police officers and special agents of the Federal Bureau of Investigation, who at the critical time in issue had been assigned to Boston.

After an evidentiary hearing,[2] I have denied the petitioner any relief under 28 U.S.C. § 2255 for the reasons stated hereinafter.

## II.

■ The gist of petitioner's attack on his sentence is that he was mentally incompetent because of his addiction to narcotics at the time of the alleged offense, his conviction, and his plea of guilty before me. Although there was testimony from the petitioner that he took daily injections of heroin prior to his arrest (N.T., September, 1968, pp. 5–8), there was also testimony at the hearing before me which I find credible and more persuasive that petitioner was not rendered mentally incompetent by narcotics at any of the following times: at his commission of the offense, at his arrest, and at the time he made statements or a confession, and when he plead guilty.

One of the arresting officers, Detective William Roe of the Boston Police Department, testified that though petitioner was under the influence of nar-

1. The specific counts of the indictment, Bill of Indictment No. 22350, are discussed in greater detail in Section III infra. I have not considered the allegations of invalidity regarding the sentence imposed by my colleague, Chief Judge John W. Lord, Jr., under Bill of Indictment No. 22388. Although petitioner alleges that his plea of guilty to that indictment was likewise invalid because of his addiction to narcotics, the statute, 28 U.S.C. § 2255 requires:

"An application for a writ of habeas corpus in behalf of a prisoner * * * shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him * * *."

Thus I can make no ruling as to the petitioner's allegations pursuant to sentence on Bill of Indictment No. 22388.

2. The hearing in this matter took place on three separate days. Because of the problems of court scheduling and climatic conditions when the Boston witnesses were unable to attend at the time of a major snowstorm, there were several continuances. That portion of the testimony that was taken on September 16, 1968 will be referred to as "N.T. September, 1968" throughout this opinion. The testimony taken on March 13 and 14, 1969 will be referred to as "N.T. March, 1969" throughout this opinion.

cotics, that nevertheless petitioner was able to understand the questions posed to him and to communicate coherently. (N.T., March, 1969, pp. 10, 24). As to petitioner's allegation that he was mentally incapable at the time of his arrest or unable to understand the nature of the proceedings against him (N.T., September, 1968, p. 35), I find that testimony of Detective Roe was credible and that the testimony of the petitioner was not credible.

■ The federal officer who first interviewed the petitioner in Boston, F.B.I. Agent William T. Boland, Jr., likewise testified that the petitioner was coherent, understood questions posed, and was fully advised of his constitutional rights during the initial interview which lasted less than an hour. (N.T., March 1969, pp. 27–31). Special Agent Orlin Lucksted, who was present during the interrogation of the petitioner and assisted Agent Boland, corroborated his testimony. (N.T., March, 1969, pp. 55–56). At the time of his interrogation, petitioner testified that he was "sick" because of the lack of narcotics and unable to remember the whole of these interviews. (N.T., September, 1968, p. 10). I have considered the conflicting testimony and resolved the conflict adversely to petitioner's contentions. I find the testimony of both of the federal agents that the petitioner was coherent and fully advised of his constitutional rights at the time of his statements in Boston credible.

Although petitioner had orally admitted commission of the crime to the federal agents in Boston, two weeks later he gave a signed confession to a Philadelphia based Special Agent Donald T. Klinger of the Federal Bureau of Investigation. At the hearing before me, Agent Klinger testified that petitioner was in full possession of all of his mental facilities (N.T., March, 1969, p. 85). I find Klinger's testimony that petitioner was fully capable mentally credible.

■ In support of his contention that his narcotic addiction made communication with his attorney impossible at the time of his plea, petitioner testified that the court-appointed counsel, a member of the Voluntary Defenders Association, had not discussed the advisibility of pleading guilty or not guilty. (N.T., September, 1968, p. 21). But his counsel testified that he had discussed the various factors involved in the judgment to plead guilty and the circumstances surrounding his confession in Boston. (N.T., March, 1969, pp. 68–72). Petitioner told his attorney that he was experiencing withdrawal symptoms at the time of his statements in Boston, but that he was not under the actual influence of any drug. (N.T., March, 1969, p. 66). All of the evidence given by both attorneys from the Voluntary Defenders Association who had contact with petitioner in connection with the case indicated full participation by petitioner in the decision to plead guilty (N.T., March, 1969, p. 64), including his approval of the withdrawal of certain motions he had filed before counsel had been appointed (N.T., March, 1969, p. 70). Counsel for the petitioner did not testify to any difficulty in communicating with his client regarding the plea. Furthermore, at the time of his plea, by his own statements, petitioner was not addicted to narcotics. (N.T., September, 1968, p. 23). I find that petitioner was able to participate effectively in his defense and to assist counsel in a rational defense.

Petitioner has failed to prove that his condition of being under the influence of narcotics made him either incapable of making a voluntary confession or of entering a voluntary and intelligent plea of guilty; nor does his evidence establish that he was mentally incompetent at the time of the robbery or at the time of his plea. Grennett v. United States, 403 F. 2d 928 (C.A.D.C.1968).

■ Petitioner's claim that he should have been allowed to serve his prior state imposed sentence does not justify any relief since a convicted person had no right to a certain priority of punishment as between state and federal

jurisdictions. Williams v. Taylor, 327 F.2d 322 (10th Cir., 1964). Petitioner's claims that he was not allowed to confront his "accusers" and to challenge the array of grand jurors, are on equally unsound ground. The government was under no duty to disclose its witnesses before the time of defendant's trial. The array of grand jurors cannot be attacked through habeas corpus proceedings. Redmon v. Squier, 162 F.2d 195 (9th Cir. 1947). The proper way to attack the composition of the grand jury is through a timely motion to quash the indictment.

### III.

Petitioner was indicted on counts one and two for violating 18 U.S.C. § 2113(a) of the Bank Robbery Statute, in count three for violating 18 U.S.C. § 2113(b), and in count four for violating 18 U.S.C. § 2113(d). He entered a guilty plea to each of the counts, and on July 20, 1966 he was sentenced to a term of eight years on count one. The sentences on counts two, three, and four were five-year concurrent terms, and that sentence was to run consecutively to the sentence imposed under count one. As noted above, the execution of the latter five-year sentence was suspended and petitioner was placed on probation for a period of five years subsequent to the sentence on count one. Petitioner urges that the sentences on counts two, three, and four must be vacated because of the "pyramiding of sentences of Bill of Indictment 22350 was erroneous." In substance it is his claim that the several provisions of 18 U.S.C. § 2113 here involved,[3] "merge" upon conviction for purposes of sentencing and are not consecutively punishable where only one bank robbery is involved, even if the total sentence imposed on the several counts is less than the maximum sentence which could have been imposed on any single count. The result sought by the defendant is to have his sentence vacated on three of the four bank robbery counts leaving him with a prison term of eight years without any subsequent probation rather than the eight-year sentence plus the five-year probation imposed.

The petitioner's case is indistinguishable from United States v. Welty, 287 F.Supp. 580 (E.D.Pa.1968); [Note on May 8, 1970 Welty was reversed, 3 Cir., 426 F.2d 615, No. 17919, No. 17920, No. 17921.] however, Welty, supra is on appeal and the Court of Appeals determination in that case will be fully dispositive of the instant matter. It should be noted that when the Welty matter was decided I did not have the benefit of any decision by the Court of Appeals for

3. "§ 2113. *Bank Robbery and Incidental Crimes.*

"(a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to or in the care, custody, control, management, or possession of, any bank, or any savings and loan institution; or

Whoever enters or attempts to enter any bank, or any savings and loan association, or any building used in whole or in part as a bank, or as a savings and loan association, with intent to commit in such bank, or in such savings and loan association, or building, or any part thereof so used, any felony affecting such bank or such savings and loan association and in violation of any statute of the United States, or any larceny—

Shall be fined not more than $5000 or imprisoned not more than twenty years, or both.

"(b) Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value exceeding $100 belonging to, or in the care, custody, control, management or possession of any bank, or any savings and loan association, shall be fined not more than $5000 or imprisoned not more than ten years, or both.

\* \* \* \* \*

"(d) Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both."

the Third Circuit considering the merger issue as it has been raised by Sadler and Welty.

Two panels for the Court of Appeals for the Third Circuit have recently been required to focus on the problem of sentencing under the Bank Robbery Statute. United States v. McKenzie, 414 F. 2d 808 (3 Cir., 1969) and United States v. Conway, 415 F.2d 158 (3 Cir., 1969). In these opinions subsequent to *Welty*, there have been articulated additional doctrines which some might consider as a weakening of the rationale I expressed in Welty.[4]

*McKenzie* and *Conway* could be construed to be in conflict with the rationale in *Welty*. For without any dissent, the Court of Appeals there noted in *McKenzie* that:

> "We reject the Government's contention here because we also find that there is sufficient prejudice here to justify vacating the *lesser concurrent* sentences if it was error to sentence appellant on counts one and two." 414 F.2d 811 (Emphasis added.)

While there was no problem of consecutive sentences in *Conway, supra,* the Court of Appeals noted:

> "Separate consecutive sentences cannot be given under the subsections of 18 U.S.Code § 2113 since 'there was no indication that Congress in-

tended also to pyramid the penalties' of § 2113."[5]  415 F.2d 160.

In fact, if the opinions in *Conway* and *McKenzie* had been published prior to *Welty*, I would probably have had somewhat less confidence in the doctrine announced in *Welty*.

There are significant factual differences between *McKenzie* and *Conway* as compared to the instant case of *Sadler*. For in neither *Conway* nor *McKenzie* did the trial judge impose consecutive sentences. In *McKenzie*, appellant was "  *  *  * convicted and sentenced on a three-count indictment. On count three he received a 20 year term, on count two a concurrent term of seven years." U. S. v. McKenzie, 414 F.2d 808, 811. In *Conway*, "  *  *  * after their conviction, defendants were both sentenced to 15 years on each count of the two-count indictment, the sentences *to run concurrently*." 415 F.2d 158, 160. (Emphasis added.)  Thus when in *Conway*, the Court of Appeals reversed directing the "  *  *  * District Court to reword the sentences to show that they are imposed only under Count-2 of the indictment, which count charges the offense under 18 U.S.Code § 2113(d)" (415 F.2d 166) the reversal did not thwart the trial judge's intention that Conway be subject to 15 years of institutional and/or probationary supervision. Similarly, in *McKenzie*, the vacation of counts one

4. See also Benton v. Maryland, 395 U.S. 784 at 790–791, 89 S.Ct. 2056, 2060, 23 L.Ed.2d 685. The Benton case is of collateral importance in that it makes an analysis of the possible harm to a defendant of separate sentences on multiple counts of an indictment which involve the same criminal acts. For the Supreme Court, Mr. Justice Marshall noted:

> "For example, there are a few States which consider all prior felony convictions for the purpose of enhancing sentence under habitual criminal statutes, even if the convictions actually constituted only separate counts in a single indictment tried on the same day. Petitioner might some day in one of these States have both his larceny and burglary convictions counted against him. Although this possibility may well be a remote one, it is enough to give this case

an adversary cast and make it justiciable. Moreover, as in *Sibron*, [392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917], both of petitioner's convictions might some day be used to impeach his character if put in issue at a future trial. Although petitioner could explain that both convictions arose out of the same transaction, a jury might not be able to appreciate this subtlety."

5. In view of the Court of Appeals citation of Prince v. United States, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957), I respectfully assume that the statement quoted above was dictum, since it was not necessary to the holding in Conway to adjudicate the problem of separate consecutive sentences.

and two concurrent sentences of seven to ten years respectively in no way diminished the trial judge's intention that defendant be subject to a twenty year term of institutional and probationary supervision. In contrast to the practical results of *Conway* and *McKenzie, supra,* in the instant case if the three consecutive sentences are vacated, Sadler will receive a windfall by a technical error in that he will not be subject to the additional five year period of probation.

In all respectful candor, in many appellate cases I must note that there has been often a failure to consider the broad implications of the vacation of sentences. For to apply mechanically a vacation of sentence doctrine can clearly thwart the trial judge's intentions even where there is no allegation of lack of due process or fairness in the manner in which the trial judge evaluated evidence in imposing sentence. A mechanical application in vacating sentences can create a maelstrom of problems which neither improve the quality of the substantive justice in sentencing or consider the general public interest that some defendants' conduct require substantial periods of imprisonment. Of course the instant matter is factually distinguishable from those cases such as United States, ex rel. Brown v. Rundle, 417 F.2d 282 (3rd Cir., 1969), where the Court required that a State prisoner be resentenced because the sentencing court had considered a constitutionally inadmissible confession when determining the severity of a sentence. Unlike *Brown, supra,* there is no basis for a claim that as sentencing Judge I considered any evidence which would be constitutionally inadmissible. Perhaps *Sadler* and *Welty* are appropriate cases for a re-examination of the rationale of vacating sentences when the vacation results in a significant reduction of the sentence intended by the trial judge and where absent the merger issue there is no breach of any other purported right of the defendant.

Sadler, though merely thirty-one years old, had a record of extraordinary criminal activity and incarceration.

In 1951 at the age of thirteen he was declared a juvenile delinquent. In 1954 he was convicted of armed robbery. In 1961, and 1965 he was sentenced to the Eastern State Penitentiary for various crimes. (Notes of Testimony of Sentencing, p. 4, July 20, 1966, United States v. Sadler, Cr. No. 22350). Certainly if he had been sentenced on count four alone, he could have received a maximum sentence of twenty-five years; and he would have no basis to file the instant request for vacation or reduction of his sentence. Thus the instant issue is whether he is entitled to have his present sentence reduced because of an alleged defect in sentence procedure. To so vacate and reduce the sentence would be to exalt form over substance in a situation where the defendant has suffered no injustice, but would receive an undeserved windfall; particularly in a situation where the Court's intention on sentencing was made indubitably clear. I concur completely with the rationale articulated by Mr. Justice Black in Bozza v. United States, 330 U.S. 160, 166, 67 S.Ct. 645, 649, 91 L.Ed. 818 (1947) wherein he noted:

> "This Court has rejected the 'doctrine that a prisoner, whose guilt is established by a regular verdict, is to escape punishment altogether because the court committed an error in passing the sentence.' * * *

> "The Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner."

While partially distinguishable from the facts of this case, relevant also is the comment of Mr. Justice Frankfurter in Green v. United States, 365 U.S. 301, 306, 81 S.Ct. 653, 656, 5 L.Ed.2d 670.

> "Plainly enough, the intention of the district court judge was to impose the maximum sentence of twenty-five years for aggravated bank robbery, and the formal defect in his procedure should not vitiate his considered judgment."

If the above rationale is rejected and I am reversed in *Welty*, I will sua sponte vacate the sentences on counts two, three, and four after the judgment of reversal in *Welty* is final.

## ORDER

And now this 31st day of March, 1970, it is hereby ordered that the Motion to Vacate Sentence be denied.

## SUPPLEMENTAL ORDER

And now, this 12th day of August, 1970, in accordance with the Opinion of the Court of Appeals in United States of America v. Welty, 3 Cir., 426 F.2d 615, May 8, 1970, it is hereby ordered that Counts 2, 3 and 4 of petitioner's criminal conviction under Bill of Indictment No. 22350 are vacated.